**In re the Marriage of Anthony J. SABO, Appellant–Petitioner,**

v.

**Cindy K. SABO, Appellee–Respondent.**

No. 58A05–0608–CV–409.

Court of Appeals of Indiana.

Dec. 29, 2006.

---

Nancy C. Jacobs, Jenner Auxier & Jacobs, LLP, Madison, IN, Attorney for Appellant.

Kena S. Hollingsworth, Hollingsworth Jocham & Zivitz, LLC, Carmel, IN, Attorney for Appellee.

## OPINION

FRIEDLANDER, Judge.

Anthony J. Sabo (Father) appeals an order establishing the terms of physical custody of his and Cindy K. Sabo's (Mother) daughter, A.S.

We affirm.

The facts favorable to the trial court's ruling are that Father and Mother were divorced on February 17, 1998. The dissolution order incorporated a settlement agreement the parties had negotiated and submitted for the court's approval. The only portion of the settlement agreement (and thus the dissolution order) in dispute in this appeal involves the issue of child custody. At the time of her parents' divorce, A.S. was three years old. With respect to her custody, the parties agreed, and the court ordered, as follows:

> The parties agree that custody of the minor child, [A.S.] born August 16, 1994, shall be joint. The parties further agree it is in the best interests of the minor child that both parents shall in all respects share in and be considered equal physical custodial parents and that each parent shall, at all times, have all the same rights and access to the minor child and decision making regarding her care and comfort. The parties acknowledge that a satisfactory schedule for when the minor child shall reside with each parent has been agreed upon whereby each party will have the minor child in his or her custody 50% of each year. At such time when the minor child reaches school age, the parties agree she shall live with one parent during the school year and with the other parent during summer vacation. The parties agree to divide evenly any expenses associated with any visitation agreement. Wife agrees to allow Husband access to any military installation at which Wife may reside or upon which the minor child attends school, daycare, or any extracurricular activities. Each party agrees to include the other on any list of individuals permitted to pick-up [sic] or drop-off [sic] the minor child at any school, daycare, or extracurricular activity in which she may be enrolled or participating.

*Appellant's Appendix at 2.*

When A.S. started school, Mother was serving in the Air Force. She had just been assigned to duty that she learned would require frequent travel and necessitate working long, unpredictable hours. The parties agreed that Father should have physical custody during the school year and Mother should have physical custody during the summer. This arrangement was implemented during A.S.'s first six years in school. During that time, Mother's career in the Air Force continued to flourish. She was promoted to the rank of major in 2000, and to lieutenant colonel in November 2005. Between the time of the divorce and the commencement of these proceedings, Mother's duty posts included Los Angeles, Korea, Washington, D.C., and Alaska. At the time of the custody hearings now under appeal, mother was preparing for a transfer to a staff officer's job with Hicklar's European Command, a United States military base located in Germany. Sometime before she began her seventh year of school, A.S. expressed a desire to alter the previous arrangement and live with her mother during the school year and her father during the summer. Accordingly, on July 22, 2005, Mother filed a pleading entitled, "Respondent/Mother's Combined Verified Petition to Modify Child Custody and Child Support; and, for Attorney's Fees." *Id.* at 16.

The court conducted a hearing on Mother's petition. Three evidentiary sources were presented at that hearing on the

subject of custody: (1) Father's testimony, (2) Mother's testimony, and (3) a Custody Evaluation Report submitted by Dr. Richard Lawler. We begin by reproducing the "Summary and Conclusions" section of Dr. Lawler's report:

The only issue is the wishes of [A.S.]. Both parents can do well parenting [A.S.], and I think [A.S.] would do well no matter where she lives. The only question is how much weight a court should give to the wishes of an 11 year old at this point.

Ordinarily, I would not recommend putting much weight on the wishes of an 11–year–old because of their typical immaturity. However, I do think that [A.S.]'s wishes are the normal wishes of a girl who is approaching adolescence, and would like to spend more time at this point with her mother. I do not find any serious negatives in her relationship with her father, just a normal desire to spend at this point more time with her mother.

I do think that [A.S.] is the type of child who will thrive in whatever environment she is in. Tony has been able to provide well for her, and there is nothing problematical in her living circumstances with her father. My impression is that Cindy, regardless of whether or not she gets deployed, could provide well for [A.S.] also. [A.S.] seems to be a flexible child, and I think she would adapt well if she went to live with her mother, and I think she would continue to do well if she remained with her father.

From a strictly psychological standpoint, I cannot say that there are any strong advantages or disadvantages to [A.S.] being with one parent over the other parent. I think that the court can safely make any decision that it considers appropriate in this particular case, but the psychological functioning of either of the parents or of [A.S.] is not a factor that tends to push the decision in one direction or the other.

*Appellee's Appendix* at 7. Dr. Lawler's report essentially concluded both parties are fit parents, A.S. has good relationships with both, and there was no reason the court should refrain from awarding custody during the school year to either parent. In other words, Dr. Lawler did not recommend placement with one parent, as opposed to the other.

The remainder of the evidence consisted entirely of Father's and Mother's testimonies. Neither sought school-year custody on the basis of the other parent's was and is as follows: Father notes that A.S. has lived with him during the school year and attended the same school all of her life. A.S. has a large and well-established group of friends, is well integrated into the local community, and participates in several extracurricular sports and other activities. Her paternal grandparents live close by, she sees them on a daily basis, and she has a particularly close relationship with her paternal grandmother. Also, she is doing well in school. Mother, on the other hand, pointed out that it was and is A.S.'s wish to live with Mother. It was also noted that A.S. is just beginning to enter puberty and would feel more comfortable talking about all of the issues attending that experience with her mother rather than her father. Mother also testified that A.S. would be attending a high-quality school if she lived with Mother in Germany, and that A.S. would be able to participate in many of the same activities that she would if she lived with Father.

At the close of evidence, the trial court entered an order denying Mother's motion to modify custody. But, that characterization of the disposition is somewhat misleading. Mother sought an order awarding custody of A.S. during the school year

to Mother, and that is precisely what the trial court's order accomplished. The court ordered that A.S. would live with Mother during the school year, but in so doing it noted that such did not require a modification of the original custody provision in the Settlement Agreement—hence the denial of that request.[1] Father appeals the trial court's order awarding custody to Mother during the school year.

 We begin by noting that this case comes before us in a somewhat unusual legal posture. Mother filed a request to modify the original custody order and that request was denied. Yet, she asks on appeal that we affirm that order, while Father urges us to reverse it. The trial court denied the petition but granted the request for relief therein, while stating that it did not constitute a modification of custody. It is not surprising, then, that there is some disagreement between the parties as to what standard the trial court should have applied in considering Mother's request: the custody modification standard or the initial custody determination standard. The difference is generally important. *See Hughes v. Rogusta,* 830 N.E.2d 898 (Ind.Ct.App.2005).

 In an initial custody determination, both parents are presumed equally entitled to custody, but a petitioner seeking subsequent modification bears the burden of demonstrating that the existing custody should be altered. *Id.* Regardless of the setting, however, when custody rights of the parents are determined, the best interests of the child are the primary consideration. To that end, custody conflicts are left to the trial court to resolve, *Keen v. Keen,* 629 N.E.2d 938 (Ind.Ct.App.1994), and are reviewed only for an abuse of discretion. *Nunn v. Nunn,* 791 N.E.2d 779 (Ind.Ct.App.2003).

In the instant case, the parties agreed in the Settlement Agreement that at this point in her life, A.S. would live with one parent during the summer, and the other during the school year. Logistically speaking, and assuming both parents wanted to spend significant parenting time with A.S., this was the only realistic option, as Mother and Father lived thousands of miles apart. When A.S. expressed a desire to reverse the practice of living with Father during the school year and Mother during the summer, that option was consistent with the terms of the Settlement Agreement and did not require a modification of the original order. The court became involved only because the parties could not agree on which of two custody options, both of which were permissible under the Settlement Agreement, would be implemented. Thus, the court in the subsequent proceeding was not asked to modify the terms of the agreement or alter the arrangement upon which the parties had agreed, but instead to choose between two alternatives permissible under that agreement. The resulting order, then, cannot fairly be characterized as a modification of the Settlement Agreement. Yet, this was clearly not an initial determination of custody, either. It was instead a dispute that could not be resolved merely by consulting the terms of the Settlement Agreement. In short, the court was called upon to perform the sort of task that a

---

1. The order stated, in relevant part,

 In an *in camera* interview, the child expressed a desire to live with her mother during the school year. Since she is soon to be twelve (12) years old and has lived with her father during all school years to date and primarily with her mother during summer vacations, the Court finds that the child's desire to reverse that arrangement should be approved and that, in so doing, does not require a modification of the Settlement Agreement.

 *Appellant's Appendix* at 8.

dissolution court frequently is called upon to perform in its continuing jurisdiction of matters stemming from a prior dissolution order entered by the court. *See, e.g., Fackler v. Powell,* 839 N.E.2d 165, 167 (Ind.2005) ("a court that issues a dissolution decree retains exclusive and continuing responsibility for any future modifications and related matters concerning the care, custody, control, and support of any minor children"). What standard should it have applied to Mother's request for an alteration in the parents' past custody practices? Because this was neither a modification of custody nor an initial custody determination, we conclude the court centered its focus upon the pivotal consideration—A.S.'s best interests. We turn now to an examination of the evidence supporting the trial court's decision.

■ Most of the relevant factors placed before the trial court are in equipoise. Both Mother and Father were loving and good parents, and both wanted custody of A.S. during the school year. The expert custody evaluator could not recommend one over the other, concluding that each was a good choice. Mother and Father both had good, stable employment and were comfortably able to provide a good standard of living for A.S. All of this is not to say, however, that Mother and Father were similarly situated. Father lived in Rising Sun, the small Indiana town where he grew up. His parents lived nearby and enjoyed good relationships with A.S. A.S. had attended school in Rising Sun since she began kindergarten. She had many friends and was involved in several activities and sports.

Mother, on the other hand, lived on or near military bases and experienced fairly frequent relocations. If the trial court awarded school-year custody to Mother, A.S. would live with Mother in Germany. While there, A.S. would live in comfortable housing and attend a good school. Although the potential for anxiety caused by virtue of moving to a foreign country might otherwise be a cause for concern, it is not so here. During her summers with Mother, A.S. has lived in a variety of places, including Alaska, Illinois, California, Korea, and Virginia. It is undisputed that A.S. is an outgoing child who adjusts well in new places. In fact, she indicated to Dr. Lawler that "she liked seeing new places." *Appellee's Appendix* at 5. Thus, what might otherwise be regarded as potentially a negative aspect of living with Mother (e.g., new places, lack of continuity and stability) might in this case be considered a positive (e.g., the opportunity to see new places in a safe and secure environment). Dr. Lawler opined that A.S. is "flexible", capable of adapting to new situations, and "the type of child who will thrive in whatever environment she is in." *Id.* at 7. The evidence indicated that A.S. had many friends in Rising Sun. It was also universally acknowledged that A.S. is a gregarious child who meets people easily. In fact, A.S. reported that although she had spent comparatively little time with her mother in Alaska, "she had already made some friends" there. *Id.* at 5.

Finally, and perhaps most importantly, we consider the fact that A.S. has arrived at the doorstep of adolescence, and the onset of puberty. This is a time of change and growth, not only emotional and social, but physical as well. Mother, the trial court, Dr. Lawler, and A.S. herself, all regarded this as significantly favoring placement with Mother. When asked whether she had concerns about A.S. "going through puberty without her mom around", *Transcript* at 23, Mother responded:

> Yes, absolutely. And those are some of the reasons that I think she's better off with me at this stage of her life, because

she is going to start going through puberty and she's already asked me some questions and I'm not sure she's asked her father. And I think that only another female could answer some of those questions.

*Id.* Mother explained that A.S. was "really comfortable" talking with Mother. *Id.* For her part, A.S. told Dr. Lawler, "it was easier to talk with her mother about puberty issues." Appellee's Appendix at 5. According to Dr. Lawler, "[f]or that reason, she described her mother as the only person that she can talk to about everything," *id.,* and she "would like to spend more time at this point with her mother." *Id.* at 7. It was presumably with these things in mind that Dr. Lawler observed in the concluding section of his report that A.S.'s desires to live with her mother "are the normal wishes of a girl who is approaching adolescence." *Id.* at 7. Father addressed this question by noting that he believed he could communicate with A.S. on such subjects, and that his mother, who enjoyed a "very, very, very close" relationship with A.S., Transcript at 106, "absolutely" "would or could discuss issues like puberty and so forth" with A.S. *Id.* at 107. Father acknowledged, however, that he would be "shocked . . . if a same sex child would not be more comfortable talking to the same sex parent" about such things. *Id.* at 95.

■■ All of which brings us to Father's primary legal argument, which is that the trial court placed too much emphasis on A.S.'s wishes on the subject. No one disputes that A.S. has expressed a preference to live during the school year with her mother. Father contends the trial court placed too much emphasis on A.S.'s desire in view of Ind.Code Ann. § 31–14–13–2(3) (West, PREMISE through 2006 Second Regular Session). That statute provides that one of the factors courts should consider in deciding custody disputes is "[t]he wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age." We note first the statute does not direct courts to discount entirely the wishes of children under the age of fourteen. It merely provides that a child's wishes are to be given *more* weight in the court's balancing of factors if the child is at least fourteen years. Thus, A.S.'s desire to live with Mother was entitled to some consideration by the court. How much is appropriate?

We agree that the trial court's order might be interpreted to reflect that the trial court considered *only* A.S.'s wishes on the subject. In the only paragraph of the order articulating any rationale for its decision, the court stated:

That, in their agreement, the parties agreed that they would have joint legal and physical custody of their daughter . . . and that when she became school age, she would live with one parent during the school year and the other parent during summer vacation. There were no criteria mentioned to determine which parent would have physical custody during those periods. In an *in camera* interview, the child expressed a desire to live with her mother during the school year. Since she is soon to be twelve (12) years old and has lived with her father during all school years to date and primarily with her mother during summer vacations, the Court finds that the child's desire to reverse that arrangement should be approved and that, in so doing, does not require a modification of the Settlement Agreement.

*Appellant's Appendix* at 8. Although the court cited only A.S.'s wishes in announcing its decision, we believe A.S.'s preference on the matter was not the only criteria considered. In fact it appears that all

relevant facts and circumstances were placed before the court, either through the testimonies of Father and Mother or through Dr. Lawler's report.

With all of the foregoing "data", the trial court was called upon to decide which placement would be in A.S.'s best interests. The evidence strongly suggests that A.S. would do well regardless of which parent was granted school-year custody. Both parents are responsible people and conscientious and loving parents. Both enjoy close relationships with A.S. Placement with Father would achieve stability and continuity. Placement with Mother would permit A.S. to travel to far-off places, meet new people, and enjoy different experiences. Everyone seems to agree that A.S. is equipped to handle both settings with equal alacrity. It would be as incorrect to characterize these factors as unimportant as it would be to suggest that the trial court ignored them. They *are* important, but they are in equipoise. They do not tip the balance one way or the other with respect to which parent should be awarded school-year custody. So, the trial court proceeded to the factors that render placement with Mother preferable to the alternative, even if just barely. Those factors are, of course, A.S.'s impending adolescence and her wish to live with her Mother. In fact, we believe the two are closely related and may be restated as one, i.e., A.S. wants to live with her mother in large part because A.S. is entering puberty.

This case is as good an illustration as any of the reason that we accord latitude and deference to a trial court's custody determinations. *See Nienaber v. Marriage of Nienaber*, 787 N.E.2d 450 (Ind.Ct. App.2003). Considering the sensitive and subtle nature of the factors to be considered in this case, the ability to speak with and observe the principals was of considerable value in making the decision. In these respects, the trial court was far better situated than this court to perform the necessary personal and interpersonal evaluations, and weigh the competing considerations. Upon sifting through the evidence presented by Mother and Father, the court decided it would be in A.S.'s best interests to live with her mother during the school year. We cannot say that conclusion is clearly against the logic and effect of the facts and circumstances before the trial court, or the reasonable inferences drawn therefrom. *Pawlik v. Pawlik*, 823 N.E.2d 328 (Ind.Ct.App.2005).

Judgment affirmed.

KIRSCH, C.J., and RILEY, J., concur.