## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 13 2017, 5:40 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Dan J. May
Kokomo, Indiana

### IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Paternity of M.E., | December 13, 2017 |
| Michael A. Ewing, | Court of Appeals Case No. 34A04-1705-JP-1089 |
| *Appellant-Respondent,* | Appeal from the Howard Circuit Court |
| v. | The Honorable William C. Menges, Special Judge |
| Marcia Wagner, | Trial Court Cause No. 34C01-0110-JP-197 |
| *Appellee-Petitioner.* | |

**Kirsch, Judge.**

[1] Following a hearing, the juvenile court denied Michael A. Ewing's ("Father") Petition to Modify Custody, Support, and Parenting Time, and he now appeals, raising five issues that we consolidate and restate as:

I. Whether the juvenile court abused its discretion when it denied Father's request to modify custody;

II. Whether the juvenile court abused its discretion when it found Father in contempt for failing to return the parties' child to Marcia Wagner ("Mother") after exercising parenting time;

III. Whether the juvenile court abused its discretion when it denied Father's request to modify a child support order issued in 2005; and

IV. Whether the juvenile court erred when it allowed a former judge in the case to represent Mother.

[2] We affirm in part, reverse in part, and remand with instructions.

## Facts and Procedural History

[3] Father and Mother have one child together, M.E. ("Child"), who was born in November 2000. In October 2001, Mother filed a petition to establish paternity and support, and, in April 2002, paternity was established. For a time, the parents lived together and jointly supported Child, but they separated by June 2003, and an order of $134 per week in child support was entered. *Appellant's App. Vol. II* at 4. Mother and Father shared joint legal custody of Child, and Mother had physical custody of him, with Father to exercise parenting time as the parties agreed and pursuant to the Indiana Parenting Time Guidelines. In June 2004, Father petitioned for a change of venue from the judge, and, after Mother and Father each struck from a panel of three judges, the Honorable Michael Krebes ("Krebes") assumed jurisdiction of the case on June 22, 2004.

*Id.* at 6. In August 2004, then-Judge Krebes entered an order concerning visitation issues. *Id.* at 6, 21-22. In September 2004, Father petitioned for modification of child support, and while that was pending, the parties agreed in December 2004 to the appointment of the Honorable William C. Menges to serve as Special Judge, after Krebes lost his superior court seat in an election. *Id.* at 7-8. In March 2005, a support order was entered under which Father paid Mother $122.00 per week in child support; the child support obligation worksheet, upon which the $122.00 was based, included weekly child care expenses of $77.00 per week. *Id.* at 9, 23-26.

[4] Over the next several years, the parties filed various pleadings, primarily concerning parenting time and support and including contempt petitions. In August 2010, Krebes filed an appearance to represent Mother, as well as a petition for contempt citation. *Id.* at 12. In December 2010, Father, then-pro se, filed a motion asking the court to remove Krebes as counsel for Mother.[1] Following a hearing, the juvenile court denied Father's motion to remove Krebes as Mother's counsel and found Father in indirect contempt for failure to comply with visitation. *Id.* at 13. In May 2011 and August 2011, Krebes filed on behalf of Mother two more petitions for contempt. In September 2011, Mother appeared with Krebes, and Father appeared pro se, for a hearing on one

---

[1] The pertinent CCS entry indicates that Father filed "what the Court deems to be a Motion to Remove Counsel for the Petitioner." *Appellant's App. Vol. II* at 13. The motion is not included in the record before us; however, it may have been an oral motion. *See Appellant's Br.* at 7 (stating that Father "made an oral Motion for Removal" of Krebes).

or both of the contempt petitions, and the juvenile court found Father in indirect contempt of court. In April 2015, Father, now represented by counsel, filed a petition to modify custody, support, and parenting time. In August 2015, a hearing was held on Father's petition, with Mother appearing in person and with Krebes, and Father appearing in person and with his counsel. On January 4, 2016, the juvenile court denied Father's petition. *Id*. at 15.

[5] Approximately seven months later, on August 2, 2016, Father filed another petition to modify custody, child support, and parenting time ("Petition to Modify"), the ruling from which Father now appeals. The Petition to Modify alleged that "there has been a substantial change of circumstances that makes the prior order [for custody, support, and parenting time] unreasonable and said Orders should be modified with custody transferred to Father." *Id*. at 27. A hearing was held on Father's Petition to Modify on September 26, 2016; Mother appeared pro se at the hearing, and Father appeared in person and by counsel. In support of his Petition to Modify, Father presented the testimony of Child, Mother, and Father.

[6] Child was the first to testify, describing that he "can't stand" being at Mother's home, that she does not respect his privacy, and that he rode his bicycle to Father's home on ten or more occasions during the summer, but did not tell Mother. *Tr. Vol. II* at 13. When asked whether "different things happened since prior order of the court[,]" Child replied, "No." *Id*. at 5. Mother testified next and stated that Child would tell her that he wanted to live with Father "when he was in trouble," but that Child "seems pretty happy when he's at

[her] home." *Id*. at 15-16. Mother's parenting policy was that, when Child was not with her, she wanted him to "check in" with her by phone every couple of hours. *Id*. at 9, 14, 16. Mother indicated that she was not opposed to Child having parenting time with Father and "never said no as long as I know about it and where he's at." *Id*. at 17. Mother was employed as a special education teacher at the same high school that Child attended. When asked if she got paid "the same amount as you did in the last hearing," which was in July 2015, Mother indicated that it was almost the same with the only change being a raise of ten cents per hour. *Id*. at 13.

[7] According to Father, Child never said that he was supposed to check in periodically with Mother, so Father was unaware of that obligation. Child complained to Father "about [Mother] invading his privacy." *Id*. at 21. Father worked at the same high school as Mother, and he was, for the most part, home during the summer, so Child would ride his bike to Father's house and then Father would drive Child back to Mother's residence, but would drop off Child at the corner at Child's request because Child would "get in trouble" after having been with Father. *Id*. at 23. Father stated that Mother removed the front tire from Child's bike after she discovered his last trip to Father's home and that she grounded Child. Father stated that Child was sad that he could not see Father as much, but "he still finds a way to sneak down to see me." *Id*. at 24. Counsel asked Father, "[W]hat's been a substantial change in circumstances since the Judge made the last order[,]" and Father replied,

Well, he still complains about her invading his privacy. He leaves whenever he wants to, doesn't tell her where he's going and the only time that he gets in trouble is when she's seen me bringing him back 'cause she had no clue where he was at.

*Id.* at 21. In his testimony, Father directly asked the juvenile court when making its custody decision to consider Child's wishes, given his age. Counsel asked Father whether his income had changed since the parties were last in court during the summer of 2015, and Father agreed with Mother that he had only received a ten or fifteen cent raise and that his income was basically the same as it had been at the last hearing. *Id*. at 23. Counsel for Father conceded that it had been less than a year since the juvenile court's prior order, which was issued in January 2016 following a July 2015 hearing on Father's April 2015 petition to modify custody, support, and parenting time, but asked the court to consider Child's wishes, given his age, wishes, and continued complaints about privacy and living with Mother. *Id*. at 27.

[8] At the conclusion of the hearing, the juvenile court remarked that, in the court's view, Mother was "somewhat over-protective" and that Father was "over permissive," and that Child "doesn't like rules so uses [Father]'s help to manipulate the situation to get what he wants." *Id*. at 28. The juvenile court stated that "nothing's changed since last summer," when the court held a hearing on modification and, at that time, did not find that there had been any material change in circumstances, but that "the question becomes whether or not [Child's] age does become a material change." *Id*. The court recognized that as a child gets older his or her desires warrant consideration, and, in order

to further consider that aspect, took Father's Petition to Modify under advisement. *Id.* at 29. The juvenile court directed Father to provide a child support obligation worksheet, which Father filed on September 28. *Appellant's App. Vol. II.* at 16, 28.

[9] While Father's Petition to Modify was still under advisement, Krebes filed on Mother's behalf a petition for contempt on November 21, 2016, alleging that Father "has failed and refused to return [Child] to [Mother] at the conclusion of his parenting time and retains physical custody of [Child] in violation of the Court's existing custody order." *Id.* at 29. A hearing was held on February 13, 2017, at which Mother appeared in person and with Krebes, and Father appeared in person and by his counsel. Mother testified that on November 3, 2016, Child left home, but did not state where he was going, so Mother followed him and observed Father's car coming down the street and Child getting into Father's car. She testified that, other than meeting Child at the mall for an hour one time, she had not had custody or visitation with him since he left on November 3, missing his sixteenth birthday in November, as well as Christmas and the holidays. She also testified that she had seen Child getting into Father's car, without prior visitation arrangements having been made with Father, on several prior occasions. Father testified that Child had told him on numerous occasions that he did not want to be at Mother's home or reside with her. Father acknowledged that Child received a cell phone from him for Christmas, but he did not provide the number to Mother. Child testified that he did not want to live at his Mother's home and that his Father "asked" him

whether he wanted to go back to Mother's residence, but did not ever tell Child that he needed to do so. *Tr. Vol. II* at 58-59.

[10] At the close of the evidence, the juvenile court stated:

> At the conclusion of the first petition to modify custody, I concluded that Mr. Ewing . . . by his actions was undermining the authority of [Mother] and the net result of that was encouraging [Child] to defy his mother. And so changing custody would do nothing at that point but empower [Child] in this relationship. The attitude that he displays here today shows it's exactly that[.] . . . This second [P]etition to [M]odify was taken under advisement. Thirty-seven days later [Child]'s running away and less than a month after that we had a citation filed and basically I wanted to see what the evidence was from the citation before I ruled and what the evidence is is that *the [P]etition to [M]odify custody filed . . . August 2nd, 2016, should be and hereby is overruled and denied.*

*Id.* at 67-68 (emphasis added). The juvenile court also found Father in contempt "for willfully disregarding the order of the court," and it sentenced Father to the Howard County Jail for thirty days with no good time credit, but suspended the jail time on the condition that Father "strictly comply with all orders of the court regarding custody and visitation and parenting time." *Id.* at 68-69. The juvenile court, speaking to Father, reminded him, "[Y]ou need to understand regardless of how much you disagree with [Mother]'s parenting, you need to back that up because if you don't back that up and you continue to undermine her, then you're going to have consequences," referring to the jail time. *Id.* at 69. The juvenile court ordered that Child was to be returned to Mother's home that day.

[11]   On February 28, 2017, the juvenile court issued a written order memorializing its February 13 verbal order from the bench, denying Father's Petition to Modify, finding Father in contempt and sentencing him to a suspended thirty-day sentence in jail, and directing that Child be returned to Mother's physical custody immediately, subject to Father's right to exercise parenting time pursuant to the Guidelines and as the parties may otherwise agree.[2] Father filed a motion to correct error, which the juvenile court denied. Father now appeals.

## Discussion and Decision

[12]   At the outset, we recognize that Mother did not file an appellee's brief. In this situation, we apply a less stringent standard of review with respect to showings of reversible error. *In re Paternity of B.N.C.*, 822 N.E.2d 616, 618-19 (Ind. Ct. App. 2005). We do not undertake the burden of developing arguments for the appellee, and we may reverse if the appellant establishes prima facie error, that is, an error at first sight, on first appearance, or on the face of it. *In re Paternity of E.C.*, 896 N.E.2d 923, 924 (Ind. Ct. App. 2008). When the appellant fails to sustain that burden, we affirm. *B.N.C.*, 822 N.E.2d at 619.

---

[2] We note that, on February 28, 2017, Father, by counsel, filed a Praecipe for Withdrawal of Submission, pursuant to Indiana Trial Rules 53.1(A), (E) or 53.2(A), alleging that Father's Petition to Modify had been taken under advisement on September 26, 2016, had not been yet ruled upon by the juvenile court, and asking that the matter be certified to the Indiana Supreme Court for appointment of a Special Judge. *Appellant's App. Vol. II* at 32-33. The Indiana Supreme Court issued a Determination Pursuant to Trial Rule 53.1(E), finding that, according to the CCS, the juvenile court denied the Petition to Modify on February 28, which was the same date that Father had filed his praecipe asserting that the juvenile court had failed to rule in a timely manner, and "[I]t is not clear whether the ruling was entered before or after the praecipe was filed." *Id.* at 34. Therefore, our Supreme Court ordered that "submission of this case is not withdrawn from the judge." *Id.*

[13] Where, as here, the trial court does not make special findings, we review its decision as a general judgment.[3] The judgment will be affirmed if it can be sustained upon any legal theory consistent with the evidence. *Wolljung v. Sidell*, 891 N.E.2d 1109, 1111-12 (Ind. Ct. App. 2008). In making this determination, we neither reweigh the evidence nor judge the credibility of witnesses. *Id*. Judgments in custody matters generally turn on essential factual determinations and will be set aside only when they are clearly erroneous. *Id.* at 1112. We will not substitute our own judgment if any evidence or legitimate inferences support the trial court's judgment. *Walker v. Nelson*, 911 N.E.2d 124, 128 (Ind. Ct. App. 2009)*.*

## I.  Custody

[14] Modifications of custody in the context of paternity are governed by Indiana Code section 31-14-13-6, which states that the court may not modify a child custody order unless:

> (1) modification is in the best interests of the child; and
>
> (2) there is a substantial change in one (1) or more of the factors that the court may consider under section 2 and, if applicable, section 2.5 of this chapter.

---

[3] In an action to modify custody, a trial court is not required to make special findings unless requested by a party. *In re Paternity of J.T.*, 988 N.E.2d 398, 400 (Ind. Ct. App. 2013). Here, neither party requested special findings.

Section 2, as referred to in the statute, provides that the court shall determine custody in accordance with the best interest of the child and shall consider all relevant factors, including:

> (1) The age and sex of the child.
>
> (2) The wishes of the child's parents.
>
> (3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.
>
> (4) The interaction and interrelationship of the child with:
>
>> (A) the child's parents;
>>
>> (B) the child's siblings; and
>>
>> (C) any other person who may significantly affect the child's best interest.
>
> (5) The child's adjustment to home, school, and community.
>
> (6) The mental and physical health of all individuals involved.
>
> (7) Evidence of a pattern of domestic or family violence by either parent.

Ind. Code § 31-14-13-2. The party seeking modification of an existing custody order bears the burden of demonstrating that the existing custody order should be altered. *Kirk v. Kirk*, 770 N.E.2d 304, 307 (Ind. 2002).

[15]     We review custody modification decisions for an abuse of discretion. *Walker*, 911 N.E.2d at 127. We grant latitude and deference to our trial judges in family law matters. *Werner v. Werner,* 946 N.E.2d 1233, 1244 (Ind. Ct. App. 2011), *trans. denied.* We will not substitute our own judgment if any evidence or legitimate inferences support the trial court's judgment. *Walker*, 911 N.E.2d at 127.

[16]     In this case, Father has provided no evidence of a substantial change of circumstances. To the contrary, the evidence was that the situation was essentially the same as it was before the last custody hearing in July 2015, *i.e.*, nothing had changed. Essentially, Father's argument on appeal is that the juvenile court should have given more weight to Child's wishes, since he was fifteen years old when he testified. We recognize that Indiana Code section 31-14-13-2 provides that the wishes of the child is one of the factors that courts should consider, with more consideration given to the child's wishes if the child is at least fourteen years of age. Ind. Code § 31-14-13-2(3). However, although the statute allows a trial court to consider the child's wishes, it does not require the trial court to follow those wishes. As this court has recognized, when custody rights of the parents are being determined, "the best interests of the child are the primary consideration." *Sabo v. Sabo*, 858 N.E.2d 1064, 1068 (Ind. Ct. App. 2006). Here, the juvenile court heard Child's testimony, as well as that of Mother and Father. The court was aware of Child's wishes and, indeed, expressly took the matter under advisement "to figure out how much weight to give" Child's desires. *Tr. Vol. II* at 29. The juvenile court expressed concern

that Child was manipulating his parents and attempting to control Mother and that Father's actions were contributing to the situation. After considering all the evidence, the juvenile court ultimately determined that a modification of custody was not warranted. Father has not shown that the juvenile court's decision was an abuse of discretion.

## II. Contempt

[17] Father contends that the juvenile court erred when it found him in contempt after Child left Mother's home in November, went to Father's, and Child did not return to Mother's custody or have any visitation with her after that time. A party who has been injured or damaged by the failure of another to conform to a court order may seek a finding of contempt. *In re Paternity of M.P.M.W.*, 908 N.E.2d 1205, 1209 (Ind. Ct. App. 2009). Whether a party is in contempt is a matter left to the discretion of the trial court. *Id.* We will reverse a trial court's finding of contempt only if there is no evidence or inferences drawn therefrom that support it. *Id.*

[18] Here, the record reflects that on November 3, 2016, Child left Mother's home, did not tell her where he was going, and when she followed him, she saw Father's car coming down the street and pick up Child; Mother testified that she had witnessed Father pick up Child in this same way on several prior occasions as well. Child did not return to Mother's home, and, on November 21, she filed a petition for contempt, alleging that Father was in contempt for failing to return Child to her. At the February 2017 hearing, Father stated that he had asked Child about returning to Mother's home, but Child did not want to do so.

Child testified that his Father had asked him if he wanted to go back to Mother's home, but never told him that he had to go back to her home. *Tr. Vol. II* at 58-59. Father also testified that he gave Child a cell phone for Christmas, but did not advise Mother of it or give her Child's cell phone number. Other than one meeting at the shopping mall on February 5, 2017, for an hour, Mother had not seen Child since he left on November 3, including on his birthday or over the holidays. Mother testified to contacting Father via text on a number of occasions to ask him to bring Child to the designated location at the City Building used by the parties for parenting time exchanges of Child, and Father responded to her messages "at the beginning[,]" but "then he stopped responding."[4] *Id*. at 36. Mother testified that, each time, she went to the City Building, but Father and Child did not show up.

[19] At the conclusion of the February 2017 contempt hearing, the juvenile court reminded Father that it had already admonished Father in July 2015 that his conduct was "undermining the authority of [M]other." *Id.* at 67. The court further noted that it had purposefully waited to rule on Father's Petition to Modify because it "wanted to see what the evidence was" regarding the contempt allegations before making a decision on modification. *Id*. at 68. The juvenile court found Father in contempt "for willfully disregarding the order of the court," and it sentenced Father to the Howard County Jail for thirty days

---

[4] We note that Mother presented a thread of text messages to and from Father that were admitted into evidence, but are not included in the record before us. *Tr. Vol. II* at 37-38.

with no good time credit, but suspended the jail time on the condition that Father "strictly comply with all orders of the court regarding custody and visitation and parenting time." *Id.* at 68-69.

[20] In asserting that "the decision finding the Father in contempt is contrary to law and/or an abuse of discretion," Father argues that Child "ran away" from Mother's home "and refused to return even though [Father] repeatedly asked [Child] to return to his Mother's home[,]" noting that Mother saw Child every day at school, where she worked, "and could have simply taken [Child] home with her, but she refused to do so." *Appellant's Br*. at 12. Maintaining that he did not willfully violate court orders, Father contends that "[Mother]'s inaction to make her son return home was tacit consent to [Child] living with [Father] and vitiates any contempt on [Father]'s part." *Id*. at 34. We disagree.

[21] We recognize that the evidence reflects a situation where a teenaged son has expressed to his Father that he wants to live with him. However, the juvenile court, who saw the witnesses and heard the evidence, determined that Father had repeatedly acted in a way to undermine Mother's authority, which only empowered Child to continue to disobey Mother. The juvenile court had advised Father of its concern in this regard on one or more prior occasions before finding him in contempt in February 2017. With knowledge of the existing custody order, Father arranged for pick-up of Child on November 3, 2016, without Mother's consent, and failed to return Child to Mother. Father has failed to show that the juvenile court's contempt determination was an abuse of discretion.

# III. Child Support

[22]     Father next challenges the denial of his request to modify child support. As the moving party, Father had the burden of establishing grounds for modifying his child support obligation. *E.C.*, 896 N.E.2d at 925. Under Indiana Code section 31-14-11-1, the trial court may order either or both parents to pay any reasonable amount for child support. Modification of a child support order is controlled by Indiana Code section 31-16-8-1,[5] which states that modification may be made only:

> (1) upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable; or
>
> (2) upon a showing that:
>
>> (A) a party has been ordered to pay an amount in child support that differs by more than twenty percent (20%) from the amount that would be ordered by applying the child support guidelines; and
>>
>> (B) the order requested to be modified or revoked was issued at least twelve (12) months before the petition requesting modification was filed.

Ind. Code § 31-16-8-1(b).

---

[5] Indiana Code section 31-14-11-2.3 states that child support orders issued under Indiana Code chapter 31-14-11 are subject to Indiana Code chapters 31-16-6 through 31-16-13.

[23] When we review a court's determination regarding modification of child support, we reverse only if the trial court has abused its discretion. *E.C.*, 896 N.E.2d at 924. An abuse of discretion occurs when the decision is clearly against the logic and effect of the facts and circumstances before the trial court. *Id.* at 924-95. We consider the evidence most favorable to the judgment and the reasonable inferences to be drawn therefrom. *Id.* We do not reweigh evidence or reassess the credibility of witnesses. *Id.*

[24] Here, Father's Petition to Modify requested modification of custody, child support, and parenting time. The juvenile court's February 28 Order denied Father's Petition to Modify, and in so doing, the juvenile court left in place the existing support order of $122.00 per week, which was issued in 2005.[6] *Appellant's App. Vol. II* at 19, 26. Father raises various challenges to the child support order, one of which is the claim that the calculation of the 2005 child support order ($122.00 per week) included a weekly child care expense in the amount of $77.00 per week, which Child no longer incurs or needs, given that he turned sixteen years old in November 2016. Father asserts, "[T]here was no evidence that [] Mother spends $77.00 per week for day care[,]" and thus the $122.00 per week was no longer the appropriate support amount, and the order should have been modified accordingly. *Appellant's Br*. at 16. Based on the

---

[6] Father sought in April 2015 to modify the $122 support order that had been issued in 2005, but following a July 2015 hearing, the juvenile court denied Father's request for modification.

record before us, we agree and find that Father has made a prima facie showing of error with regard to child support.

[25] Following the September 26, 2016 hearing, Father submitted, pursuant to the juvenile court's directive to do so, a proposed child support obligation worksheet. *Appellant's App. Vol. II* at 28. That worksheet used income figures of $619.38 per week for Father and $300.00 per week for Mother, which according to testimony, was almost the same as what the parties were earning at the time of a modification hearing in the summer of 2015, but for a raise of ten or fifteen cents per hour. Father's proposed worksheet, which did not include the $77.00 per week in day care expenses, reflected a weekly support obligation for Father in the amount of $95.66, which reduced by ninety-eight overnights of parenting time credit, resulted in a weekly obligation of $67.39, or more than a forty percent reduction from the $122.00. *Id*. We find that Father has made a prima facie showing of a continuing and substantial change in circumstances making the prior order unreasonable. Accordingly, we remand the matter to the juvenile court with instructions to recalculate Father's weekly child support obligation to exclude weekly child care expenses and, if warranted, modify the amount of parenting time credit to which Father is entitled.[7]

---

[7] The 2005 child support obligation worksheet, prepared by the juvenile court, utilized ninety-eight overnights when determining Father's parenting time credit. *Appellant's App. Vol. II* at 26. We recognize that there was testimony that Child was absent from Mother's home for eighty-four days (November 3, 2016 to February 13, 2017) and that ninety-eight overnights may or may not continue to be the proper number of overnights. We leave that determination to the juvenile court on remand.

# IV. Krebes as Mother's Counsel

[26] On appeal, Father asserts that he was denied a fair trial and an impartial determination of the facts and law because Krebes represented Mother in this case, after "having heard evidence and issu[ing] an order concerning visitation issues." *Appellant's Br.* at 12. Referring to the Rules of Professional Conduct concerning conflicts of interest, and relying on the premise that "one who has been an attorney for a litigant should not thereafter act as a judge in any part of the same controversy," Father urges that "[t]he converse is also true, and a lawyer should not accept employment as an advocate in any matter upon the merits of which he has previously acted in a judicial capacity." *Id.* at 12-13, 20.

[27] The record before us reflects that Krebes assumed jurisdiction as judge in this case in June 2004, he issued one order in August 2004, and by December 2004, Judge Menges had been appointed as Special Judge on the case. Over nine years later, in August 2010, Krebes filed an appearance to represent Mother. In December 2010, Father, pro se, filed a motion to remove Krebes as Mother's counsel, and, following a hearing, the juvenile court denied Father's motion.[8] *Appellant's App. Vol. II* at 13. Father did not appeal that decision, and Krebes continued to represent Mother through and including the February 2017 hearing on Mother's petition for contempt. Father's appellate challenge to Krebes's representation is untimely, and the issue has been waived.

---

[8] Any order that was issued is not included in the record before us.

Furthermore, we note, Mother appeared pro se – not with Krebes – at the September 26, 2016 hearing on the Petition to Modify, from which Father now appeals. In sum, Father has failed to show in what way he was prejudiced by Krebes's representation of Mother, other than making general allegations that Krebes had been a judge on the case and issued a visitation order in 2004. We reject Father's claims that he was denied a fair and impartial trial due to Krebes's representation of Mother.

[28] Affirmed in part, reversed in part, and remanded with instructions.

[29] Najam, J., and Brown, J., concur.