

FILED

Jul 11 2019, 8:41 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Dylan A. Vigh
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Amanda R. Blystone
Austin T. Robbins
Broyles Kight & Ricafort, P.C.
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Matthew Purnell,

*Appellant-Respondent,*

v.

Kayla Purnell,

*Appellee-Petitioner.*

July 11, 2019

Court of Appeals Case No.
19A-JP-162

Appeal from the Johnson Circuit Court

The Honorable K. Mark Loyd, Judge

The Honorable Andrew Roesener, Magistrate

Trial Court Cause No.
41C01-1702-JP-21

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Respondent, Matthew Purnell (Father), appeals the trial court's Order, awarding Appellee-Petitioner, Kayla Purnell (Mother), sole legal custody and primary physical custody of their minor child, S.P. (Child).

We affirm.

# ISSUE

Father presents one issue on appeal, which we restate as: Whether the trial court abused its discretion by considering Father's active-duty status in the United States Air Force when it awarded sole legal and primary physical custody to Mother.

# FACTS AND PROCEDURAL HISTORY

Father and Mother married on December 15, 2014. At the time, Father was an active member of the United States Air Force stationed in California. After the wedding, in February 2015, Mother relocated from Indiana to California and the couple resided in an on-base residence. Approximately fourteen months later, in April 2016, Mother moved back to Indiana to live with her mother (Grandmother) due to purported allegations of Father's infidelity. When she left California, Mother was pregnant and, approximately two weeks after returning to Indiana, the Child was born on April 20, 2016. There is no dispute that Father is the legal and biological father of the Child.

[5] Mother has been the primary caregiver for the Child since his birth and has effectuated parenting time opportunities for Father when Father is in Indiana. Six weeks after his birth, Father visited the Child for the first time. In June of 2016, Father travelled to Indiana with the intent to remove the Child from Mother's care and to return with him to California. On his way to Indiana, Father stopped at the home of his father and stepmother in New Mexico to spend the night. During this visit, Father informed them of his plan to take the Child as he did not believe Mother was fit to be the Child's primary caretaker. Father's stepmother contacted Grandmother and informed her of Father's plans. Mother was able to successfully thwart Father's plan while still allowing him parenting time when he was in Indiana. Father returned to California without the Child.

[6] Mother has been treated for mental health issues since she was approximately eleven years old. When she was thirteen years old, Mother spent three weeks in inpatient hospital care for suicidal tendencies. Another suicide attempt at age fifteen was followed by a month of inpatient care. Mother has been diagnosed with bipolar disorder Type I, anxiety disorder not otherwise specified, and ADHD. Bipolar disorder Type I is characterized by "periods where [Mother's] mood can be manic and then periods where [her] mood can be depressed." (Transcript p. 11). Every two to three months, Mother has an appointment with Susan Fay, an advanced nurse practitioner and clinical specialist (Nurse Fay), who works with Mother on medical management and assisted her to overcome postpartum depression after the birth of the Child. Overall, Mother

is compliant with the proposed course of treatment and Nurse Fay has no concerns that Mother can appropriately care for the Child.

[7] In addition to Nurse Fay, Mother is under the care of Diane Burks (Burks), a licensed clinical social worker, who has been working with Mother since she was eleven years old. Burks has seen positive changes in Mother since the start of the treatment plan. Mother is "more rational, much more grounded, [with] fewer manic episodes." (Tr. p. 45). When Mother gets manic, "she talks real fast. She gets judgmental, she gets more opinionated. She'll get stuck on something and be on a tangent, and she'll be on a roll about it, and it's hard to stop her." (Tr. p. 48). Mother is "secure in her job, she has plans for the future, she's dealing with college." (Tr. p. 60). "[S]he's got it all together and knows where she's going and how to manage that." (Tr. p. 60). In the six months prior to the hearing, Mother has become "much more confident with herself, much more closely bonded with [Child], clearly attached. [Child] is very comfortable with Mother and [G]randmother and goes between them back and forth easily." (Tr. p. 60). Because Mother brings Child to the appointments with Burks, Burks had an opportunity to chart his evolution. She noticed that Child "regressed" in walking skills after a long visit with Father when he was about one year old. (Tr. p. 55).

[8] Mother maintains fulltime employment as a security guard and is enrolled in college courses part-time at Ivy Tech. She and the Child reside with Grandmother, who aids Mother in her care for the Child. Mother is aware that "she has her mom to step in and help out and support her when she's not doing

as well" and Grandmother remains a stabilizing and supportive presence in Mother's life. (Tr. pp. 23-24).

[9] During the proceedings, Father re-enlisted in the Air Force and was re-assigned to the Cavalier Air Force base in North Dakota where he is the Crew Chief for the missile warning radar and spacecraft surveillance. Father has no immediate plans to return to civilian life or Indiana. He lives on-base with his girlfriend and their eleven-month-old child.

[10] On August 29, 2016, Father filed for a dissolution of marriage in the Superior Court of Santa Barbara in California (Superior Court). After conducting a hearing on Father's petition, the Superior Court ruled that it "has no jurisdiction to make an initial custody order in this case. The [C]hild's home state of Indiana has jurisdiction to make the initial custody orders." (Appellant's App. Conf. Vol. II, p. 48). The Superior Court retained jurisdiction over all other issues. On February 9, 2017, based on the Superior Court's order, Mother filed her verified petition to establish custody, parenting time, and child support with the trial court in Indiana. One week later, Father submitted his verified petition for transfer of child custody jurisdiction and for custody determination. On April 13, 2017, the trial court conducted a hearing on Father's petition, which it subsequently denied. The trial court granted Mother temporary custody of the Child. On March 2, 2018 and November 2, 2018, a final hearing was conducted on the parties' competing custody requests. On December 27, 2018, the trial court issued its Findings of Fact and

Conclusions thereon, awarding sole legal custody and primary physical custody of the Child to Mother and concluding, in pertinent part:

> 15. Two (2) predominant issues have emerged from this litigation and have great bearing [on] the critical decisions of custody and parenting time.

> 16. Those issues are as follows:
>     a. The mental and emotional fitness and stability of both Mother and Father; and
>     b. The significant geographical distance between Mother and Father.

> 17. Adding another wrinkle of complexity to this matter is the anticipated transient nature of Father's future employment with the Air Force.

> * * * *

> 31. The [c]ourt's decision today as it relates to physical custody of the minor [C]hild is predicated in large part on the ongoing presence of [G]randmother, [Burks], and [Nurse Fay] in the life of Mother.

> 32. It is impossible to know with absolute certainty what the future holds, but Mother should be mindful that the [c]ourt's decision today may have been different if Mother was not residing with [G]randmother and not fully engaged in therapy and medication management.

> 33. Future decisions by Mother resulting in changes to these important factors may be a basis to re-evaluate custody and parenting time decisions.

> 34. Father, for his part, offers the minor [C]hild the benefit of a parent with a stable career; a single family home; and a more traditional family unit.

> * * * *

36. Father, however, presents countervailing concerns to the [c]ourt.

37. Chief among those concerns is Father's plan to abduct the minor [C]hild from Mother.

38. It must be noted that this plan was not just something that Father privately contemplated and never acted upon.

39. The opposite is true.

40. Father took actual steps toward the completion of his plan, including traveling to Indiana to abduct the [C]hild.

41. It is unclear whether, ultimately, Father abandoned his plan or if it was thwarted by [G]randmother, but, regardless, the instinct to carry out the plan is of grave concern to the [c]ourt.

42. The inclination of Father to attempt to execute this scheme suggests to the [c]ourt that Father is afflicted with his own mental instability.

43. While, to some degree, it is understandable that Father's judgment was impaired during this difficult time for him, the decision to "fix" the problem through a poorly conceived interstate child abduction scheme demonstrates an appalling lack of judgment and impaired clarity of thought.

44. Adding to the concern are the statements of [Father's father] and [Father's stepmother] who both stated that Father is incapable of caring for a young child.

45. To place the minor [C]hild with Father with knowledge of the aforementioned facts cuts against the best interest of the [C]hild.

46. In addition, placing the minor [C]hild with Father will all but ensure that the minor [C]hild's relationship with Mother and [G]randmother is irreversibly compromised.

47. Placing the minor [C]hild in Father's custody will not only create a significant geographical distance between Mother and

the minor [C]hild, but it will also ascribe to the minor [C]hild the real potential for an itinerant life dictated by Father's changing military assignments.

(Appellant's Conf. App. Vol. II, pp. 31-34).

[11] Father now appeals. Additional facts will be provided if necessary.

# DISCUSSION AND DECISION

[12] Father contends that the trial court abused its discretion by awarding sole legal custody and primary physical custody of the Child to Mother. In an initial custody determination, both parents are presumed equally entitled to custody, and the "[t]he court shall determine custody and enter a custody order in accordance with the best interest of the child." Ind. Code § 31-17-2-8. There is no presumption favoring either parent. I.C. § 31-17-2-8. In determining the child's best interest, the trial court must consider all relevant factors, including specifically the following:

> (1) the age and sex of the child.
> (2) The wishes of the child's parent or parents.
> (3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.
> (4) The interaction and interrelationship of the child with:
>     (A) The child's parent or parents;
>     (B) The child's siblings; and
>     (C) Any other person who may significantly affect the child's best interests.
> (5) The child's adjustment to the child's
>     (A) Home;
>     (B) School; and
>     (C) Community.
> (6) The mental and physical health of all individuals involved.
> (7) Evidence of a pattern of domestic or family violence by either parent.

(8) Evidence that the child has been cared for by a de facto
    custodian.

I.C. § 31-17-2-8.  The trial court's decisions on child custody are reviewed only for an abuse of discretion.  *Sabo v. Sabo*, 858 N.E.2d 1064, 1068 (Ind. Ct. App. 2006).

[13]  There is a well-established preference in Indiana "'for granting latitude and deference to our trial judges in family law matters.'"  *Steele-Giri v. Steele*, 51 N.E.3d 119, 124 (Ind. 2016) (quoting *In re Marriage of Richardson*, 622 N.E.2d 178, 178 (Ind. 1993)).  In this regard, our supreme court has explained that:

> Appellate deference to the determinations of our trial court judges, especially in domestic relations matters, is warranted because of their unique, direct interactions with the parties face-to-face, often over an extended period of time.  Thus enabled to assess credibility and character through both factual testimony and intuitive discernment, our trial judges are in a superior position to ascertain information and apply common sense, particularly in the determination of the best interests of the involved children.

*Best v. Best*, 941 N.E.2d 499, 502 (Ind. 2011).  It is not enough on appeal that the evidence might support some other conclusion; rather, the evidence must positively require the result sought by the appellant.  *D.C. v. J.A.C.*, 977 N.E.2d 951, 957 (Ind. 2012).  Accordingly, we will not substitute our own judgment if any evidence or legitimate inferences support the trial court's judgment.  *Id*.

[14]  At Mother's request, the trial court included specific findings of fact and conclusions thereon pursuant to Indiana Trial Rule 52.  When a trial court

enters findings of fact and conclusions of law pursuant to Indiana Trial Rule 52, we apply the following two-tiered standard of review: whether the evidence supports the findings and whether the findings support the judgment. *Tompa v. Tompa*, 867 N.E.2d 158, 163 (Ind. Ct. App. 2007). The trial court's findings and conclusions will be set aside only if they are clearly erroneous, that is, if the record contains no facts or inferences supporting them. *Id.* A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made. *Id.* We neither reweigh the evidence or assess the credibility of the witnesses, but consider only the evidence most favorable to the judgment. *Id.* We review conclusions of law *de novo*. *Id.*

[15] In the present case, the trial court granted initial sole legal and primary physical custody of the Child to Mother. In making this custody determination, the trial court relied on several of the statutory factors listed in I.C. § 31-17-2-8, with its Order comprising of ninety-five findings of fact and forty-seven conclusions of law. On appeal, Father concedes that the trial court's findings are supported by the evidence; rather, his sole contention revolves around the trial court's consideration of his active-duty status in the United States Air Force.[1]

---

[1] Mother contends that Father waived his argument because he never raised the application of Indiana Code section 31-17-2-21.3 before the trial court. However, we have long held that "[w]hile failure to cite the controlling statute cannot be said to be sound trial practice, it does not constitute waiver of a contention within the factual framework of the litigation[.]" *Danes v. Automobile Underwriters, Inc.*, 307 N.E.2d 902, 905-06 (Ind. Ct. App. 1974). Father's active duty status was evident and was repeatedly acknowledged by the trial court. Accordingly, Father did not waive his argument on appeal. *See, e.g., In re the Adoption of S.O.*, 56 N.E.3d 77, 82 (Ind. Ct. App. 2016) (a party may not present an argument or issue to an appellate court unless the party raised that argument or issue to the trial court).

Specifically, Father asserts that the trial court violated Indiana Code section 31-17-2-21.3(a) by relying on "Father's active-duty service, and the future assignments it contemplated, as a determining factor in awarding custody to Mother." (Appellant's Br. p. 17). Indiana Code section 31-17-2-21.3 provides that

> (a) A court may not consider a parent's absence or relocation due to active duty service as a factor in determining custody or permanently modifying a child custody order.

> (b) If a court temporarily modifies a custody order due to a parent's active duty service, the order temporarily modifying the custody order terminates automatically not later than ten (10) days after the date the parent notifies the temporary custodian in writing that the parent has returned from active duty service. This subsection does not prevent a court from modifying a child custody order as provided under this article after a parent returns from active duty service.

"Active duty" is defined as full-time service in the armed forces of the United States or the National Guard for a period that exceeds thirty consecutive days in a calendar year. I.C. § 31-9-2-0.8.

[16]     *In re C.S.*, 964 N.E.2d 879, 881 (Ind. Ct. App. 2012), *trans. denied*, a mother chose to reactivate her active duty service by taking a job as a career counselor, apparently indefinitely, in Kentucky because it provided better pay and benefits than the private sector. We held that because the mother testified that she would remain in Kentucky for "some time to come," her location would only be changed upon her request, and she could not be deployed to a combat zone,

the mother's service did not demonstrate the impermanency contemplated by the statute. *Id*. at 885. However, *In re C.S*. was decided in the context of a custody modification with the 'impermanency' language alluding to the return of the parent from active duty service as contemplated by the application of section (b) of the statute. In the most current pronouncement *Hazelett v. Hazelett*, 119 N.E.3d 153 (Ind. Ct. App. 2019), we reversed the trial court's initial custody determination in favor of mother, as it appeared "that the trial court did, in fact, consider [f]ather's absence due to his military service as a factor in awarding [m]other sole legal custody" in violation of section (a) of the statute. *Id.* at 161. Accordingly, "in light of the trial court's insufficient findings and the fact that the court apparently considered [f]ather's active duty service in its initial custody determination," we remanded for a new custody determination. *Id*.

[17] Father testified that he is the Crew Chief for the missile warning radar and spacecraft surveillance at the Cavalier Air Force base in North Dakota. Unlike *In re C.S*., Father's reassignments are uncertain and not voluntary. He cannot choose his location and could be ordered to go where needed. As he is serving full-time in the armed forces of the United States, he falls within the province of I.C. § 31-17-2-21.3(a). Although Mother proposes to limit the application of the statute to an "active duty combatant who has been deployed to another country for a limited period of time," no such language is included in section (a) of the statute, nor are we persuaded to constrain the statute's interpretation as Mother suggests.

[18] Our review of the trial court's Order indicates that the trial court considered Father's active duty service in its determination of the Child's initial custody. Emphasizing the "anticipated transient nature of Father's future employment with the Air Force," the trial court granted Mother custody, as awarding custody of the Child to Father would result in "an itinerant life dictated by Father's changing military assignments." (Appellant's App. Conf. Vol. II, p. 34).

[19] Nevertheless, unlike *Hazelett*, where we remanded in part due to the trial court's insufficient findings, in the present case, the trial court entered extensive findings of fact and conclusions thereon. "[I]t is not necessary that each and every finding be correct, and even if one or more findings are clearly erroneous, we may affirm the judgment if it is supported by other findings or is otherwise supported by the record." *Stone v. Stone*, 991 N.E.2d 992, 998 (Ind. Ct. App. 2013). Although the trial court considered Mother's mental health struggles and cautioned her to be compliant with her medical providers, the trial court was impressed by the strides Mother has made since returning to Indiana. Mother has built an extensive support network and is currently gainfully employed with a realistic plan for the future. She continues to reside with Grandmother, and together they "have collaborated to create a safe and loving home environment for the Child." (Appellant's Conf. App. Vol. II, p. 32). Even when Mother became unstable, she "never displayed physically violent tendencies, suffered from visual or auditory hallucinations; or abused drugs or alcohol." (Appellant's Conf. App. Vol. II, p. 32).

The Child has resided in Indiana for the entirety of his life. He is bonded with Mother and Grandmother. Father's first visit took place when the Child was six weeks old and he has exercised parental time approximately eight to nine times since the Child's birth on April 20, 2016. Despite Father's stable employment prospects and presence of a traditional family unit, Burks explained that awarding custody to Father would be "[a]bsolutely [the] worst thing that could happen to [Child] because it would violate his attachment, his bond with [Mother] and grandmother. And to take that trust away from him just wipes out the whole bottom of the security of his development." (Tr. p. 65). Chief among the trial court's concerns with respect to Father was Father's thwarted plan to abduct his own Child. Referencing the evidence that the plan was not merely privately contemplated, the trial court viewed the "poorly conceived interstate child abduction scheme" as a demonstration of "an appalling lack of judgment and impaired clarity of thought." (Appellant's Conf. App. Vol. II, p. 34).

Mindful of our deference to the trial court in custody cases and without acknowledging the trial court's conclusions with respect to Father's active duty status, we find that, in light of the totality of the remaining trial court's findings and conclusions, sufficient evidence exists to support the trial court's grant of sole legal custody and primary physical custody of the Child to Mother.

## CONCLUSIONS

Based on the foregoing, we hold that although the trial court abused its discretion in considering Father's active duty status in the United States Air

Force, the remaining findings of fact and conclusions thereon are sufficient to support the grant of sole legal custody and primary physical custody of the Child to Mother.

[23] Affirmed.

[24] Bailey, J. and Pyle, J. concur