

FILED

Aug 31 2018, 6:56 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Andrew W. Hull
Michael R. Limrick
Evan D. Carr
HOOVER HULL TURNER LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

A. Richard M. Blaiklock
Charles R. Whybrew
LEWIS WAGNER, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Whitesell Precision Components, Inc., <br> *Appellant-Plaintiff,* <br><br> v. <br><br> Autoform Tool & Manufacturing, LLC, <br> *Appellee-Defendant.* | August 31, 2018 <br><br> Court of Appeals Case No. 18A-PL-848 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Heather A. Welch, Judge <br><br> Trial Court Cause No. 49D01-1610-PL-36015 |

**Bailey, Judge.**

# Case Summary

[1] Whitesell Precision Components, Inc. ("Whitesell") brings this interlocutory appeal, pursuant to Indiana Appellate Rule 14(A)(5),[1] challenging the trial court's refusal to dissolve a preliminary injunction compelling Whitesell to provide automotive component parts to Autoform Tool & Manufacturing, LLC ("Autoform"), pending resolution of the merits of litigation between the parties. Whitesell presents the sole issue of whether the trial court abused its discretion in refusing to dissolve the preliminary injunction issued pursuant to the parties' agreement. We affirm.

# Facts and Procedural History

[2] Whitesell is in the business of manufacturing and distributing engineered, specialty, and standard components and parts used in various industries, including in the assembly and manufacture of automobiles.[2] Autoform is in the business of manufacturing components used in the assembly and manufacture of automobiles. Autoform uses injector cups supplied by Whitesell to produce fuel rail assemblies that Autoform sells to Hitachi America, Ltd. ("Hitachi").

---

[1] Indiana Appellate Rule 14(A)(5) provides: "Appeals from the following interlocutory orders are taken as a matter of right … Granting or refusing to grant, dissolving, or refusing to dissolve a preliminary injunction[.]"

[2] The facts are derived from the trial court's order of January 5, 2017 granting Autoform a temporary restraining order.

Hitachi places fuel injectors into Autoform's fuel rail assemblies, and the finished products are installed into automobiles.

[3] Pursuant to direction from Hitachi, Autoform agreed in 2013 to use Whitesell as its sole source of injector cups. Autoform utilizes a "just-in-time" inventory system whereby parts are not stockpiled. The quantity of parts ordered at one time may vary. In October of 2013, Whitesell provided Autoform a per-unit quoted price of $2.470 for each injector cup, based upon a five-year quantity estimate. In January of 2014, Autoform requested a price quote for lower-volume shipments and Whitesell provided a quote of $2.958 for each injector cup.

[4] On November 17, 2014, Autoform issued its first purchase order to Whitesell. The purchase order listed the per unit price of $2.470. Whitesell filled the purchase order. Autoform then issued subsequent purchase orders, each listing the $2.470 price.

[5] On July 29, 2016, Whitesell issued an invoice to Autoform reflecting the $2.958 price. Whitesell also sought an alleged "payment shortfall" of $343,154.15. Autoform did not pay the amount demanded and, on September 21, 2016, Whitesell informed Autoform that shipments of the injector cups would cease on October 1, 2016. That date was extended as the parties attempted to reach an agreement. However, on December 22, 2016, Whitesell ceased its shipments of injector cups to Autoform.

On December 27, 2016, Autoform filed a motion seeking a temporary restraining order against Whitesell, and the trial court conducted a hearing on January 4, 2017. At that hearing, Autoform advised the trial court that Autoform's supply of injector cups would likely be exhausted by the next day. The next day, the trial court issued a temporary restraining order decreeing that Whitesell was to be restrained from:

> Refusing to supply the injector cups to Autoform pursuant to the terms of Autoform Purchase Orders:
>
> Taking any other action inconsistent with its obligations under the terms of the Autoform Purchase Orders;
>
> Refusing to allow Autoform to order injector cups pursuant to the same protocol and terms that it had, including the $2.470 per-unit price for injector cups;
>
> Charging per-unit price of injector cups sold to Autoform in fulfillment of Autoform's Purchase Orders above $2.470; and
>
> Applying and [sic] Terms and Conditions in addition to those ordered by this Court.

(App. Vol. II, pg. 7).[3]

---

[3] Autoform was ordered to post a bond of $50,000.00 plus additional amounts reflecting the price difference of $0.298 per injector cup ordered.

[7] After some continuances and discovery disputes, the trial court set the matter for a preliminary injunction hearing. However, the parties reached an agreement and submitted their stipulations to the trial court.[4] On September 27, 2017, the trial court entered an Agreed Order vacating the court date and converting the temporary restraining order to a preliminary injunction.[5] In relevant part, the Agreed Order provided:

> The Court's January 5, 2017, Temporary Restraining Order shall remain in effect until the Court enters judgment after the bench trial, except that Autoform is not required to post bond payments for its actual requirements of injector cups ordered from Whitesell through the time the Court enters judgment. By agreeing to continue the preliminary injunction hearing, no party waives any rights that it may have including the right to argue that the contract between the parties has already expired or will expire between the date of this order and the trial of this matter.

(App. Vol. II, pg. 166.)

[8] Thereafter, a dispute arose concerning the quality of the injector cups supplied by Whitesell to Autoform. On October 5, 2017, the trial court issued a pre-trial order providing that Autoform could debit Whitesell's account for each

---

[4] Black's Law Dictionary defines "stipulation" as including "a voluntary agreement between opposing parties concerning some relevant point," for example, "the plaintiff and defendant entered into a stipulation on the issue of liability." (10th ed. 2014 Pg. 1641).

[5] A temporary restraining order preserves "the status quo until a litigant's application for a preliminary or permanent injunction can be heard." Blacks's Law Dictionary (10th Ed. 2014 Pg. 1693).

defective injector cup delivered. Whitesell unsuccessfully sought to have the language of the order modified or to have the order vacated.

[9] On February 12, 2018, Whitesell filed a motion to dissolve the preliminary injunction. On March 5, 2018, the trial court conducted a hearing on several pending matters, including the motion to dissolve the preliminary injunction. No evidence was presented but argument of counsel was heard. On April 16, 2018, the trial court denied Whitesell's motion. Whitesell appeals.

# Discussion and Decision

## Standard of Review

[10] We review a trial court's decision to dissolve or refuse to dissolve a preliminary injunction for an abuse of discretion. *Hannum Wagle & Cline Eng'g, Inc. v. American Consulting, Inc.*, 64 N.E.3d 863, 882 (Ind. Ct. App. 2016). A trial court abuses its discretion when its decision is clearly against the logic and effect of the facts and circumstances or if the trial court misinterprets the law. *Aberdeen Apts. v. Cary Campbell Realty Alliance, Inc.*, 820 N.E.2d 158, 163 (Ind. Ct. App. 2005), *trans. denied*. To the extent that the trial court engaged in fact-finding with respect to the proper length of the injunction, we accord deference to facts found. *Hannum Wagle*, 4 N.E.3d at 882. To the extent that the decision was based upon contract interpretation, we apply a *de novo* standard of review. *Id.*

[11] Here, the preliminary injunction was entered due to the parties' stipulation. Generally, a stipulation may not be withdrawn without the consent of both

parties or for cause. *In the Matter of Ce.B.*, 74 N.E.3d 247, 250 (Ind. Ct. App. 2017). Typical grounds would include fraud, mistake, or undue influence and do not include disadvantage to a party from the stipulation. *Id.*

# Analysis

[12] At the hearing on Whitesell's motion to dissolve the injunction, Whitesell asserted "no evidentiary hearing is required at all," Tr. at 116, but argued (1) any emergency had passed because Autoform had adequate time to find an alternate supplier[6] and (2) continuation of the injunction was inequitable because an imbalance of power had been created by the trial court's subsequent order that Autoform could debit the balance owed Whitesell for parts Autoform considered defective. In denying Whitesell's motion, the trial court stated in relevant part:

> First, Autoform's [prior] testimony that it would take at least twelve months to find an alternative supplier supports the argument that Autoform would suffer irreparable harm if Whitesell was allowed to stop shipping parts. The same risk of harm exists today as it existed in January 2017. If Whitesell could refuse to ship injector cups, Autoform cannot build its fuel rail assemblies because there is no readily accessible alternative source of the specific injector cups needed. Autoform would have to close its fuel rail assembly line and lay off workers. . . . To the extent the January 5 TRO restricts remedies which would

---

[6] Whitesell referenced factual finding 26 of the trial court's January 5, 2017 order, which stated: "Autoform presented testimony that it would anticipate needing roughly twelve months to find a new source for injector cups. While searching for a new supplier, Autoform could not carry on producing its product for Hitachi." (App. Vol. II, pg. 98.)

normally be available to Whitesell by statute, such temporary equitable measures are necessary to allow the parties to conduct business as the Court addresses the merits of this case, which is a position Whitesell approved when it entered into a joint agreement with Autoform to allow the January 5 Order to be entered as a preliminary injunction on September 27, 2017. . . .

It is because Whitesell has [an] avenue to recover its damages that the Court finds keeping the January 5 TRO in place to be proper.

Appealed Order at 7-9.

[13] Whitesell argues that the injunction is now "more extensive in scope than is reasonably necessary to protect the interests of aggrieved parties," Appellant's Brief at 17 (quoting *Felsher v. Univ. of Evansville,* 755 N.E.2d 589, 600 (Ind. 2001)). According to Whitesell, it was incumbent upon the trial court to require Autoform to provide evidence of its current ability to re-source but the trial court declined to do so and simply relied upon facts that existed in the past. Whitesell largely ignores the fact that it agreed to the continuation of the injunction until the resolution of the underlying litigation.

[14] Autoform contends that Whitesell stipulated to the entry of the preliminary injunction, thus forfeiting its right to appeal the injunction, and that its motion for dissolution is an attempt to collaterally attack the agreed order. Autoform directs our attention to *Kindred v. Townsend*, 4 N.E.3d 793 (Ind. Ct. App. 2014), in which a panel of this Court dismissed an interlocutory appeal upon determining that the appellant had forfeited a right to appeal a preliminary

injunction and then attempted to revive the forfeited right by filing a motion to dissolve the injunction based on matters known when the preliminary injunction was issued.

In *Kindred*, the trial court had granted a preliminary injunction to prevent damage to disputed property and neither party appealed. *Id.* at 794. Six months later, the Kindreds moved to dissolve the preliminary injunction, claiming that the other party lacked standing. *Id.* at 795. The trial court denied the motion to dissolve and the Kindreds appealed. *Id.* This court acknowledged that, at first glance, it appeared that the Kindreds were properly appealing the denial by bringing an appeal as of right pursuant to Appellate Rule 14(A)(5). *Id.* However, the Court also considered the appellee's contention that the motion to dissolve was "not based on any new facts or circumstances that had arisen since the trial court's entry of the preliminary order." *Id.*

We found that the Kindreds had pursued a belated, collateral attack on the trial court's initial decision to enter an injunction, explaining:

> Appellate Rule 14(A)(5) provides for an interlocutory appeal as of right from orders denying a motion to dissolve a preliminary injunction. However, if read broadly, this would permit a party subject to a preliminary injunction to repeatedly bring motions to dissolve a preliminary injunction and repeatedly appeal such denials. Indeed, if we were to read Appellate Rule 14(A)(5) this broadly, a party who forfeited the right to appeal from the entry of the preliminary injunction could repeatedly resurrect their right to appeal by simply filing a motion to dissolve the injunction. Likewise, a party who forfeited the right to appeal a

denial of a motion to dissolve a preliminary injunction could resurrect their appeal by filing a repetitive motion to dissolve the injunction. This would render the time limitations of Appellate Rule 14(A) meaningless.

We therefore read Appellate Rule 14(A)(5) to mean that a party who wishes to challenge the entry of a preliminary injunction order (or the denial of a request for a preliminary injunction) must initiate their appeal within thirty days of the trial court's order granting or denying the request for a preliminary injunction. If a party fails to do so, it may not thereafter seek to dissolve the preliminary injunction based upon grounds that were known or knowable at the time of the entry of the preliminary injunction, as this would simply be a belated, collateral attack on the trial court's initial decision to enter or deny the injunction. To hold otherwise would allow limitless appeals based on the same facts tried and decided to enter or deny a preliminary injunction. On the other hand, if a party moves to dissolve a preliminary injunction based upon a change in circumstances since the entry of the injunction, and the trial court grants or denies this motion, then the party has the right to appeal the trial court's order dissolving or refusing to dissolve the injunction.

*Id.* at 796.

[17]   Whitesell's claim that it is entitled to dissolution of the preliminary injunction based upon the passage of sufficient time for re-sourcing is such a collateral attack. When Whitesell stipulated with Autoform that the temporary restraining order should be converted to a preliminary injunction, the parties agreed to its duration, that is, until the litigation was resolved by trial. The agreed order did not impose a time limit for Autoform to find a new supplier;

indeed, Autoform was not obligated to re-source its needs.[7] Whitesell cannot now be heard to complain that the trial court abused its discretion with respect to the proper length of the injunction.

[18] However, when the preliminary injunction was issued, Whitesell did not know that Autoform would obtain an order specifically permitting debits to Whitesell's account for parts Autoform considered defective while Whitesell was restrained from ceasing shipments. We cannot say that Whitesell forfeited any right to argue before the trial court that this so changed the respective obligations that the continuation of the injunction was inequitable. In advancing its position, Whitesell did not present testimony or evidentiary exhibits. On appeal, Whitesell alternately claims that new evidence was unnecessary or that Autoform should have produced evidence.[8] Nonetheless, it is apparent from the record of pre-trial orders that there had been a change in circumstances relative to the parties' business transactions. Whitesell asked the trial court to consider the necessity for continuing the injunction given that, in

---

[7] The efforts made by Autoform to re-source, if any, are not of record. However, Autoform has requested, in a related motion, to be permitted to stop using Whitesell as its supplier of injector cups.

[8] Whitesell asserts that it had an initial burden to show a change in circumstances but then Autoform needed to produce evidence to justify continuation of the injunction. In making this argument as to burden of proof, Whitesell does not acknowledge that it also stipulated that the temporary restraining order should be converted to a preliminary injunction. The burden of producing evidence was upon Whitesell, which sought to dissolve an agreed order. *In re Ce.B.*, 74 N.E.3d at 247.

Whitesell also claims, in the Reply Brief, that the "only question" remaining before this Court is whether the "key findings" of the appealed order lacked evidentiary support. Reply Brief at 20. But Whitesell fails to explain how, if findings were set aside as clearly erroneous because they lacked evidentiary support, this entitles Whitesell to dissolution of the injunction.

Whitesell's view, there was "an imbalance of power"[9] and the "emergency was long over." (Tr. at 105, 108.)

[19] The trial court's order reflects its consideration of the threatened harm to each party under the changed circumstances, including allowing Autoform to debit Whitesell's account. The trial court stated in relevant part:

> Whitesell alleges that Autoform is deducting for parts that it considers defective but have not been shown to be defective pursuant to the standards of the agreement between them. This leaves Whitesell being forced to accept an even lower amount of money for shipments of parts due to Autoform's unilateral rejection of potentially good parts.
>
> Whitesell and Autoform disagree over the extent to whose Terms & Conditions should serve as the standard to determine whether a part is defective. The issues over part quality are currently pending on summary judgment. Until the Court can make determinations regarding whose standards apply to part quality, the Court must balance the harms of allowing Autoform to debit for parts it subjectively believes are defective verses repealing the January 5 TRO.
>
> If the Court allows the current arrangement to continue, there is a risk that Whitesell will be erroneously denied revenue if Autoform is applying an overly-stringent standard. Whitesell has stated that it has suffered hundreds of thousands of dollars in damages just to this point. On the other hand, if Autoform is not

---

[9] Autoform retained a right, under the UCC, to reject defective parts, although it might ultimately have to pay damages. *See* Ind. Code § 26-1-2-601. Whitesell argued that it was barred by the injunction from exercising its right to suspend performance or cancel the contract due to Autoform's wrongful rejection of parts and failure to make payment. *See* I.C. § 26-1-2-703.

comfortable using Whitesell parts that Autoform believes do not conform with required specifications, Autoform could have a fuel rail shortage and be unable to fill its orders for Hitachi. Failure to satisfy orders would have an impact on its subsequent dealings with Hitachi, and Autoform could lose that business.

Again, the designations presented show that the balance of harms weighs in favor of Autoform because of the irreparable harm that could befall Autoform if it does not receive enough conforming parts. The Court understands that Whitesell may feel aggrieved by this stance as Autoform's determination of part quality governs for the purposes of determining the quantity of parts required under the TRO; however, Whitesell has the opportunity to seek any damages it may be incurring during this period should the Court determine that Autoform's assessment is incorrect on summary judgment.

Appealed Order at 8-9.

[20] In short, the trial court found that Whitesell could be adequately compensated by money damages if Autoform had acted wrongfully but, in the event Whitesell had acted wrongfully, Autoform was at risk of suffering irreparable harm – that which could not be adequately addressed by money damages. The trial court's decision is not clearly contrary to the facts and circumstances before it.

# Conclusion

[21] Whitesell has demonstrated no abuse of discretion in the trial court's denial of the motion to dissolve the preliminary injunction.

[22] Affirmed.

Mathias, J., and Bradford, J., concur.