**Lisa A. TOMPA, Appellant,**

v.

**Edward S. TOMPA, Appellee.**

**No. 44A05–0606–CV–285.**

Court of Appeals of Indiana.

May 17, 2007.

---

160

Monty K. Woolsey, Miroff, Cross & Woolsey, Indianapolis, IN, Attorney for Appellant.

Robert L. Nicholson, Andrea R. Dick, Beckman Lawson, LLP Fort Wayne, IN, Attorneys for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Petitioner, Lisa A. Tompa (Lisa), appeals the trial court's Order modifying legal and physical custody over the minor children, H.T. and S.T., in favor of Appellee–Respondent, Edward S. Tompa (Edward).

We affirm.

### ISSUES

Lisa raises three issues on appeal which we restate as follows:

(1) Whether the trial court abused its discretion by modifying joint legal custody to sole legal custody in favor of Edward;

(2) Whether the trial court abused its discretion by modifying Lisa's primary physical custody to equal-time parenting time for both parents; and

(3) Whether the trial court abused its discretion by denying Lisa's request for attorney fees.

### FACTS AND PROCEDURAL HISTORY[1]

Edward and Lisa were married on May 6, 1995. Two children were born of the marriage: H.T., born August 9, 1997 and S.T., born September 24, 1999. Edward is an anesthesiologist in Fort Wayne, Indiana, and Lisa is a nurse anesthesiologist working two days a week in the Fort Wayne area. On December 6, 2002, Lisa initiated divorce proceedings in the Allen Circuit Court. That same day, Lisa filed for, and was granted an *ex parte* protective order based upon certain allegations she made regarding Edward's behavior with the children. Sometime in December of 2002, the trial court vacated the protective order and entered provisional orders as to custody, visitation, and possession of the marital residence. On January 27, 2003, the trial court accepted, as a provisional order, the parties' stipulation granting custody of the children to Lisa with supervised parenting time for Edward under the control of the Allen County Court Appointed Special Advocate (CASA).

On November 18, 2003, the trial court approved a Partial Mediated Settlement Agreement in which the parties agreed to convene a panel of psychologists (the Panel) and delegate their parental authority to the Panel, *in loco parentis*, to investigate, evaluate, consult, and ultimately make a recommendation with regard to custody and parenting time for the children. The Panel consisted of three members: Dr. Marc Ackerman, Dr. Therese Mihlbauer, and Dr. Susan Dwyer.

After a thorough investigation, the Panel submitted its final recommendation with regard to the legal and physical custody arrangements of the children which was incorporated by the trial court in its Summary Disposition Order on Uncontested Bifurcated Issues (Summary Disposition Order) entered on May 27, 2004. Generally, the Summary Disposition Order provided three findings relevant to custody: (1) the Panel could not to any reasonable degree of certainty substantiate the allegations that the children had been abused; (2) the parties should share joint legal custody of the children; and (3) the children should be transitioned from supervised visitation with Edward to a more

---

1. We strongly encourage Lisa to familiarize herself with the Form of Briefs and Petitions requirements, provided in Ind. Appellate Rule 43. In particular, we refer to App.R. 43(G) which states that "[a]ll four margins for the text of the document shall be at least one (1) inch from the edge of the page."

normal parenting time arrangement via a stepwise plan. Because of the Panel's concern about "the potential for ongoing conflict and relitigation if the Tompas were to share legal custody," the Panel set forth certain recommendations with respect to the implementation of the shared legal custody arrangement. (Appellant's App. p. 68). These recommendations included family therapy for Edward and the children with Dr. Mihlbauer, and individual psychotherapy for Lisa and Edward with a doctoral level licensed mental health professional. Further, the Summary Disposition Order prohibited either party from firing Dr. Mihlbauer as the children's therapist, or taking the children to any other counselor or therapist during this process. The Panel was to self-disband upon determining that its services were no longer necessary to safeguard the welfare of the children.

On May 14, 2004, Dr. Ackerman resigned from the Panel. In or around October 2004, Lisa filed a consumer complaint with the Indiana Attorney General against Dr. Mihlbauer and Dr. Dwyer. As a result, on October 27, 2004, Dr. Mihlbauer resigned from the Panel and terminated her therapeutic relationship with the children.

On August 11, 2004, the trial court ordered that its Summary Disposition Order was final and dispositive on the issues of child custody and parenting time. Thereafter, on December 3, 2004, the trial court issued its Decree dissolving Lisa and Edward's marriage. Following an appeal of the trial court's dissolution decree, we issued a memorandum opinion on July 27, 2005. As a result of the appellate procedure, a change of judge was awarded and the jurisdiction over the pending matters was bifurcated between the Allen Circuit Court and the LaGrange Circuit Court.

On January 11, 2005, Edward filed a Verified Motion to Modify Child Custody, requesting a modification of the legal and/or physical custody over H.T. and S.T., together with sanctions and an assessment of fees and costs against Lisa. On March 30, 2005, Lisa filed a Motion for an Order Terminating the Operation of "The Panel" and Appointment of Guardian Ad Litem. (Appellant's App. p. 115). On June 9, 2005, the pending custody proceedings were transferred from the Allen Circuit Court to the LaGrange Circuit Court. During a hearing that same day, the trial court expressly ratified the continuing existence of the Panel and Guardian Ad Litem by and through Dr. Dwyer.

In August or September of 2005, the Panel recommended an equal-time parenting time arrangement between Edward and Lisa. On November 8, 2005, Lisa filed a Motion for Emergency Hearing for Contempt and Attorney Fees. Edward responded with similar pleadings against Lisa six days later. On November 17, 2005, the trial court found that no emergency existed and that Edward's actions were not contemptible. On February 21, 2006, the trial court heard evidence on the pending motions. Subsequently, on April 25, 2006, following the parties' request for findings and conclusions of law, the trial court issued its Findings of Fact and Conclusions of Law, holding that a substantial change in circumstances had occurred and the children's best interests would be served by appointing Edward as the sole legal custodian. The trial court adopted the Panel's recommendation as to the equal-time parenting time between both parents and declined to take judicial notice of the reasonableness of the attorney fees incurred in the pending matters.

Lisa now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. Standard of Review

When the trial court has entered findings of fact and conclusions of law pursuant to Indiana Trial Rule 52, we apply the following two-tiered standard of review: whether the evidence supports the findings and whether the findings support the judgment. *Staresnick v. Staresnick*, 830 N.E.2d 127, 131 (Ind.Ct.App.2005), *reh'g denied*. The trial court's findings and conclusions will be set aside only if they are clearly erroneous, that is, if the record contains no facts or inferences supporting them. *Id.* A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made. *Id.* We neither reweigh the evidence or assess the credibility of witnesses, but consider only the evidence most favorable to the judgment. *Id.* We review conclusions of law *de novo*. *Id.*

### II. Modification of Joint Legal Custody to Sole Legal Custody

Lisa first argues that the trial court abused its discretion by modifying the joint legal custody over the two minor children, as implemented by the Panel's recommendation, to sole legal custody in Edward's favor. Specifically, she contends that the evidence reflected in the trial court's findings and conclusions does not support a change in the custody arrangement.

In general, we review custody modifications for an abuse of discretion, with a "preference for granting latitude and deference to our trial judges in family law matters." *Kirk v. Kirk*, 770 N.E.2d 304, 307 (Ind.2002). When reviewing a trial court's ruling on a petition to modify custody, we may neither reweigh the evidence nor judge the credibility of the witnesses. *Van Wieren v. Van Wieren*, 858 N.E.2d 216, 221 (Ind.Ct.App.2006). Rather, we consider only the evidence most favorable to the judgment and any reasonable inferences that may be drawn from that evidence. *Id.*

A petitioner seeking modification of a child custody order bears the burden of demonstrating that the existing custody arrangement should be altered. *Id.* A court may not modify a child custody order unless (1) the modification is in the best interests of the child and (2) there is a substantial change in one or more of the factors, set forth in Indiana Code section 31–17–2–8, that a trial court may consider when it originally determines custody. Ind.Code § 31–17–2–21.

In *Walker v. Walker*, 539 N.E.2d 509, 513 (Ind.Ct.App.1989), we affirmed an award of joint legal custody, noting that the parents demonstrated a willingness and ability to communicate and cooperate in advancing the child's welfare. We held:

> [N]owhere in the record is evidence of fundamental differences in child rearing philosophies, religious beliefs, or lifestyles. Nowhere is evidence that child rearing became a battleground: . . . . [N]o evidence indicates a major obstruction in the willingness or ability of [the parents] to communicate and cooperate in advancing [the child's] welfare. On the contrary, they have demonstrated an ability to put aside their own differences in order to cooperate for [the child's] best interest.

*Id.* at 512–13.

Although we agree with Lisa that no fundamental differences in child rearing philosophies, religious beliefs, or lifestyles appear to exist between the parents, careful scrutiny of the record leads us to believe that child rearing has nevertheless become a battleground. The record is sat-

urated with evidence documenting the tensions, lack of communication, and lack of cooperation associated with the Tompas' joint legal custody arrangement.

Initially, we are concerned with Lisa's continuing persistence to label Edward as a sexual abuser of the children despite the Panel's conclusion that they were not able to determine "to a reasonable degree of certainty whether the Tompa children have or have not been the victim of abuse by anyone." In addition, the trial court subsequently found that "Lisa's allegations of sexual misconduct by Edward [are] unsubstantiated." (Appellant's App. pp. 66 and 46).

More egregious, however, is Lisa's unilateral filing of her complaint with the Attorney General's Office against Dr. Mihlbauer and Dr. Dwyer. Dr. Mihlbauer testified that Lisa's complaint compelled her to resign, something she would not have done in the absence of the complaint. We agree with Edward that Lisa's unilateral action effectively amounted to a firing of Dr. Mihlbauer in contravention of the express terms of the Summary Disposition Order. As a result of Dr. Mihlbauer's firing, Lisa terminated her daughters' relationship with their therapist, thereby impacting them negatively. Even though Edward testified that it would be in his daughters' best interests to continue individual therapeutic sessions, he admitted to not having talked to Lisa about a replacement. He clarified that because they have different viewpoints on reality, they would not be able to agree on a therapist, let alone a therapeutic endeavor.

Furthermore, although joint legal custody also includes any medical decisions relating to the children, Edward was not notified of a medical procedure that H.T. was scheduled to undergo in March of 2005. Lisa explained that she believed H.T.'s doctor would inform Edward of the exact date of the medical treatment; however, she did not inform Edward herself.

We also note Lisa's failure to cooperate in good faith with the Panel's recommendations on individual therapy sessions. Dr. Dwyer in her testimony clearly raised concerns about Lisa's continuing participation-or non-participation-in psychotherapy. In particular, Dr. Dwyer indicated that after Lisa met with a therapist on three occasions in 2004, she canceled a fourth appointment and did not reschedule.

Finally, the record is replete with references to the parties' inability to communicate concerning the children's extracurricular activities, schooling, vacations, and missed visitation opportunities. Although Lisa refers to certain situations where she and Edward were able to communicate for the good of their daughters, these situations are too few and far between to make a joint legal custody arrangement really workable.

In sum, the evidence reveals that the trial court properly used its discretion in modifying the joint legal custody arrangement to sole legal custody in favor of Edward. In this light, we wholeheartedly agree with the following words stated in the dissenting opinion in *Lamb v. Wenning*, 583 N.E.2d 745, 753 (Ind.Ct.App. 1991), *rev'd on diff. grounds*, 600 N.E.2d 96, 96 (Ind.1992): "The pitfall of awarding and maintaining a joint custody arrangement primarily to placate the [parents] should be avoided as not in the best interests of the child." Accordingly, we find that the evidence supports the trial court's findings and the findings support the judgment. *Staresnick*, 830 N.E.2d at 131.

### III. *Modification of the Physical Custody Arrangement*

Next, Lisa claims the trial court abused its discretion when it modified her primary

physical custody over H.T. and S.T. to an equal-time parenting time arrangement in accordance with the Panel's recommendation. In this regard, she makes a two-fold argument: (1) the trial court lacked jurisdiction to consider the parenting time because those issues were pending on appeal; and (2) the trial court erred by enlarging Edward's parenting time beyond that set forth in the Summary Disposition Order. Again, we disagree.

■ Here, the Summary Disposition Decree, issued on May 24, 2004, governed the terms of the parties' custody and parenting time issues. Following the dissolution of the marriage decree, an appeal ensued. Reviewing our memorandum opinion, it is clear that one of the issues raised on appeal was a purported trial court's error in granting primary physical custody of the minor children to Lisa. While it is true that a trial court lacks jurisdiction while an issue is pending on appeal, we issued our memorandum opinion on July 27, 2005, well before the trial court effectively considered Edward's challenge to Lisa's primary physical custody over the children in its hearing on February 21, 2006. Accordingly, the trial court had jurisdiction to consider Edward's request to modify the children's physical custody.

■ In its Summary Disposition Order, as adopted by the trial court, the Panel observed that a parenting time arrangement with Lisa having primary physical custody and Edward having in-home visitation supervised by CASA was not in the best interest of the children. To that end, the Panel recommended that, in order to normalize the relationship between Edward and his daughters and prior to the "determination of an ultimate, specific parenting time plan," a stepwise plan should be adopted. (Appellant's App. p. 67). This stepwise plan called for the transitioning from in-home supervised visits to unsupervised daytime and nighttime contacts.

The record reveals that Dr. Dwyer testified to the Panel's 'ultimate parenting time plan' during the February 21, 2006 hearing. She testified that both parties were participating in equal-time parenting time arrangement since October of 2005. Lisa now contends that this equal-time sharing arrangement goes beyond an annotated note included in the Summary Disposition Order stating: "When [unsupervised daytime and nighttime visits] occur, Edward's parenting time shall be that provided to a non-custodial parent as set fort in the Indiana Parenting Time Guidelines." (Appellant's App. p. 68). In its clarifying Order of August 11, 2004, the trial court elaborated that the annotated note "provides that once [Edward] commences unsupervised, overnight parenting time, the Indiana Parenting Time Guidelines will quantitatively and qualitatively govern said parenting time." (Appellant's App. p. 167).

■ We encourage parties to negotiate agreements regarding custody and parental visits. *Keen v. Keen*, 629 N.E.2d 938, 941 (Ind.Ct.App.1994). The only requirement is that the agreement be in the child's best interest. *Id.* While the Indiana Parenting Time Guidelines provide courts with specific parenting times for a child of a given age, the Guidelines themselves clearly propone that "the purpose of these guidelines is to provide a model which may be adjusted depending upon the unique needs and circumstances of each family." Indiana Parenting Time Guidelines, Preamble. Thus, they "are not meant to foreclose parents from agreeing to, or the court from granting, such additional or reduced parenting time as may be reasonable in any given case." *Id.*, cmt 2. Also, as acknowledged by the Specific Parenting Time Provisions, stipulated in Sec-

tion II, "the best parenting plan is one created by parents which fulfills the unique needs of the child and the parents."

Here, we are faced with the unusual situation that the parents convened a panel to investigate, evaluate and determine, *in loco parentis*, a parenting plan tailored to the specific needs of H.T. and S.T. The unambiguous language of the Summary Disposition Order notified the parties that, even though parenting time would be slowly increased, an ultimate recommendation would still be forthcoming. Faced with the Panel's ultimate suggestion of equal-time parenting time and the flexible nature of the Parenting Time Guidelines, we cannot conclude that the trial court clearly erred in enlarging Edward's parenting time by adopting the equal-time parenting time arrangement. *See Staresnick,* 830 N.E.2d at 131.

### IV. *Attorney Fees*

As a final contention, Lisa argues that the trial court erred in refusing to award her attorney fees. Specifically, she avers that she is entitled to attorney fees as Edward earns significantly more money than she does. We note that we decided an identical issue raised by Lisa in cross-appeal in our memorandum opinion of July 27, 2005; we stand by our analysis to decide whether to grant her attorney fees in this post-dissolution proceeding.

The attorney fees statute in connection with dissolution proceedings is discretionary: it provides that the trial court may order a party to pay a reasonable amount for the other party's attorney fees. *See Thompson v. Thompson,* 811 N.E.2d 888, 927–28 (Ind.Ct.App.2004), *reh'g denied, trans. denied; Russell v. Russell,* 693 N.E.2d 980, 984 (Ind.Ct.App. 1998), *trans. denied.* In determining whether to award attorney fees, the trial court must consider the resources of the parties, their economic conditions, the abil-

ity of the parties to engage in gainful employment, to earn adequate income and other factors that are pertinent to the reasonableness of the award. *Thompson,* 811 N.E.2d at 927–28.

Lisa argues that an award of fees is mandated due to the disparity of income between the parties. While a disparity of income may be considered in awarding attorney fees, a trial court is not required to award fees based on disparity of income alone. *Russell,* 693 N.E.2d at 984; *Kovenock v. Mallus,* 660 N.E.2d 638, 643 (Ind.Ct. App.1996), *trans. denied.* Thus, there is no abuse of discretion for the trial court not to do that which it is not required to do.

### CONCLUSION

Based on the foregoing, we conclude that the trial court (1) did not abuse its discretion by modifying joint legal custody to sole legal custody in favor of Edward; (2) did not abuse its discretion by modifying Lisa's primary physical custody to equal parenting time for both parents; and (3) did not abuse its discretion by denying Lisa's request for attorney fees.

Affirmed.

NAJAM, J., and BARNES, J., concur.