## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Sep 09 2020, 8:57 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Zachary J. Stock
Zachary J. Stock, Attorney at Law, P.C.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Katherine A. Cornelius
Deputy Attorney General

Alexis Sizemore
Certified Legal Intern
Indianapolis, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

In the Matter of
H.G. *(A Child In Need of Services)*,

M.G. *(Father)*,

*Appellant-Respondent,*

v.

Indiana Department of Child Services,

*Appellee-Petitioner,*

September 9, 2020

Court of Appeals Case No.
20A-JC-174

Appeal from the Hendricks Superior Court

The Honorable Karen M. Love, Judge

Trial Court Cause No.
32D03-1907-JC-44

**Robb, Judge.**

# Case Summary and Issue

[1] M.G. ("Father") appeals the juvenile court's dispositional order continuing his minor child's placement in foster care and raises one issue for our review, which we state as whether the juvenile court's dispositional order was clearly erroneous. Concluding it was not, we affirm.

# Facts and Procedural History

[2] Father and A.H. ("Mother")[1] are the unwed parents of H.G., born May 7, 2019 ("Child"). The parents also share two other children: Mi.G., born August 21, 2015, and V.G., born October 25, 2017, who are not the subject of this appeal, but are relevant to the current proceedings.

[3] Father and Mother have been in a relationship off and on for years. On March 5, 2018, Father was charged with domestic battery in the presence of a child less than sixteen years old. Mother was the alleged victim. Months later, on September 7, the Indiana Department of Child Services ("DCS") filed a petition alleging Mi.G. and V.G. were children in need of services ("CHINS").[2] The juvenile court initially placed the children with Father and ordered Mother to vacate the family home; the children were later removed from Father and placed with their paternal grandmother. Ultimately, Mother and Father

---

[1] Mother does not participate in this appeal; therefore, we have limited our recitation of the facts to those pertaining to Father except as necessary.

[2] The underlying facts which led to DCS' filing of the petition are unclear from the record.

admitted the children were CHINS and the juvenile court adjudicated them as such. Mother and Father each entered into an agreement with DCS admitting that they had untreated substance abuse and mental health issues, domestic violence had occurred in the home, and the coercive intervention of the court was needed. The juvenile court accepted and approved the agreed entries. Mother and Father were ordered to each complete a substance abuse assessment, domestic violence and/or batterer's assessment, follow all recommendations, and maintain suitable housing and a legal source of income. Father was also ordered to complete a parenting assessment, psychiatric evaluation, follow all recommendations, and comply with any pre-trial diversion or plea agreements in his criminal case. DCS made appropriate referrals for the parents.

[4]     At some point, due to DCS involvement, Mother and Father began living separately but maintained their relationship. Throughout the case, Father continued to test positive for THC and, on several occasions, cocaine and/or amphetamines.[3] Eventually, Father was unsuccessfully discharged from all services due to his non-compliance. In April 2019, because Mother had been compliant with the dispositional order, V.G. and Mi.G. were placed with her on a trial home visit. The following month, Child was born. At the time, Mother was living at Sheltering Wings, a domestic violence shelter, and had all

---

[3] From August 14, 2018 to July 31, 2019, Father submitted to forty-four drug screens, thirty-six of which were positive for illegal substances.

three of her children in her care. On July 1, the juvenile court extended Mother's trial home visit.

[5] On July 11, DCS received a report alleging Child was a victim of neglect because Mother tested positive for methamphetamine and amphetamine on June 28 and July 11. Two days later, DCS received another report alleging neglect of Child. Specifically, it was reported to local law enforcement that there was a suspicious vehicle parked in the shelter's parking lot and the occupants, who were suspected drug dealers, were waiting for Mother. After the police arrived, they smelled marijuana in the vehicle and subsequently searched Mother's room at the shelter but did not locate any illegal substances. As a result of the reports, DCS ended the trial home visit, detained Child, and placed him in foster care. Child was not placed with Father due to safety concerns, namely Father's failure to complete any services in V.G. and Mi.G.'s active CHINS cases and his positive drug screens. V.G. and Mi.G. were also removed from Mother's care but put in relative placement.[4]

[6] On July 17, DCS filed its petition alleging Child was a CHINS. The next day, the juvenile court held a detention hearing during which the DCS family case manager testified that Child was not placed with Father due to his non-compliance with services in the underlying CHINS cases and his positive drug

---

[4] Child was not placed with these relatives because they were unable to care for a newborn child.

screens.[5] DCS made new referrals and sometime in August, Father re-engaged in services, including domestic violence classes, individual substance abuse therapy, and home-based casework. Father also attended supervised visitation with Child. Father continued to be engaged in services but tested positive for THC on November 22 and 24.

[7] At Child's review hearing on December 11, the juvenile court acknowledged that Father "is doing better" but stated his recent positive drug screens were "concerning because he, basically, had done nothing in these cases until [Child] was removed. And, then, he started in the services and had done fairly well." Transcript of Evidence, Volume 2 at 217-18. Ultimately, the juvenile court concluded that "none of these children can be safely placed with their parents at this time without Court intervention and support." *Id.* at 218.[6] The juvenile court issued an order adjudicating Child a CHINS due to Mother and Father's failure "to supply [C]hild with a home free from substance abuse and domestic violence[.]" Appellant's Appendix, Volume II at 104.

[8] DCS subsequently filed its predispositional report recommending Child's continued placement in foster care. DCS reported that it considered placing Child with his paternal grandmother or maternal aunt and uncle. However,

---

[5] Later, upon Father's motion, the juvenile court also assumed jurisdiction of custody, parenting time, child support related issues, and a related paternity action.

[6] The juvenile court made this statement in the context of Child's review hearing and V.G. and Mi.G.'s permanency hearing during which the juvenile court changed V.G. and Mi.G.'s permanency plan to reunification with a concurrent plan of adoption. *See id.*

because paternal grandmother was out-of-state at the time of placement and maternal aunt and uncle stated they were unable to care for a newborn, "[Child] was placed in foster care with non-relative caregivers." *Id.* at 134.

[9]     A dispositional hearing was held on January 10, 2020 during which the juvenile court took judicial notice of the predispositional report. The juvenile court subsequently issued its written dispositional order and found, in pertinent part:

> The needs of the child for care, treatment, or rehabilitation are: (1) [C]hild [was] found to be [a CHINS] . . . and . . . (2) . . . will remain in the current placement.
>
> Participation by the parent[s] is necessary to: (1) increase the parent(s) ability to provide proper care, treatment, and supervision; (2) increase the parent(s) ability to have a stable and nurturing parent-child relationship; (3) allow [Child] to maintain relationship(s) with parents(s)[.]
>
> Based on the information presented in the Predispositional Report[] and provided at the hearing, the Court makes the following dispositional orders:
>
> [C]hild shall remain in his current home or placement, with supervision by DCS.
>
> * * *
>
> [DCS] must continue exercising due diligence to identify all adult relatives of the child and adult siblings who may be considered as out-of-home placements until [C]hild has been in an out-of-home placement for at least 12 months.

\* \* \*

> [I]t is in the best interests of [C]hild to be removed from the home environment and remaining in the home would be contrary to the welfare of [C]hild because: of the allegations admitted.

> [R]easonable efforts were made by DCS to prevent or eliminate the need for removal of [C]hild. . . .

Appealed Order at 1-2, 8. The juvenile court also ordered Father and Mother to participate in certain services. *See id.* at 2-7. Father now appeals.

# Discussion and Decision

## I. Standard of Review

On appellate review of judgments with findings of fact and conclusions of law, we "shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the [juvenile] court to judge the credibility of the witnesses." *Best v. Best*, 941 N.E.2d 499, 502 (Ind. 2011) (quoting Ind. Trial Rule 52(A)). A two-tiered standard of review is applied. *Tompa v. Tompa*, 867 N.E.2d 158, 163 (Ind. Ct. App. 2007). We first determine whether the evidence supports the findings and then whether the findings support the judgment. *Id.* We will set aside the juvenile court's findings and conclusions only if clearly erroneous. *Id.* "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Yanoff v. Muncy*, 688 N.E.2d 1259, 1262 (Ind. 1997). A judgment is

clearly erroneous when a review of the record leaves us firmly convinced a mistake has been made. *Tompa*, 867 N.E.2d at 163. In making these determinations, we do not reweigh the evidence or reassess the credibility of witnesses but view the evidence most favorably to the judgment. *Id.*

# II. Dispositional Order

Father only challenges the juvenile court's lack of findings regarding Child's placement; he does not challenge Child's CHINS adjudication. Instead, he argues the dispositional order was clearly erroneous "because it is not accompanied by any specific findings and does not explain why placement with Father was not in the best interest of [C]hild." Appellant's Brief at 8. We disagree.

Indiana Code section 31-34-19-10(a) requires the juvenile court's dispositional decree to contain written findings and conclusions concerning:

> (1) The needs of the child for care, treatment, rehabilitation, or placement.

> (2) The need for participation by the parent, guardian, or custodian in the plan of care for the child.

> (3) Efforts made, if the child is a [CHINS], to:

>> (A) prevent the child's removal from; or

>> (B) reunite the child with;

the child's parent, guardian, or custodian in accordance with federal law.

    (4) Family services that were offered and provided to:

        (A) a [CHINS]; or

        (B) the child's parent, guardian, or custodian;

in accordance with federal law.

    (5) The court's reasons for the disposition.

    (6) Whether the child is a dual status child[.]

In addition, the juvenile court "may incorporate a finding or conclusion from a predispositional report as a written finding or conclusion upon the record in the court's dispositional decree." Ind. Code § 31-34-19-10(b).

[13] In the case of *In re T.S.,* 881 N.E.2d 1110 (Ind. Ct. App. 2008), this court was confronted with a scenario similar to the instant case. There, the trial court entered a dispositional decree finding T.S. to be a CHINS and ordering T.S.' continued placement in foster care. *Id.* at 1113. In its written order, the trial court found "that it is contrary to the health and welfare of the child to be returned home" and that "the services offered and available have either not been effective or been completed that would allow the return home of the child without Court intervention." *Id.* T.S.' mother appealed and argued the trial court's dispositional order was clearly erroneous because it contained

"'boilerplate' findings that were inadequate to satisfy the statutory requirements for findings" pursuant to Indiana Code section 31-34-19-10. *Id.* at 1112. A panel of this court agreed that the trial court's written findings "consist[ed] predominately of boilerplate language that would not be helpful to a reviewing court and, therefore, generally would not be sufficient to permit appellate review." *Id.* at 1113. However, despite the inadequate findings, we concluded it was not reversible error because "there were few, if any, factual questions for the court to resolve." *Id.* Specifically, the mother had been indefinitely committed to inpatient mental health treatment, "presumably could not take T.S.[,]" was unavailable to care for T.S., and "no services the State might offer would decrease the need for someone besides [the m]other to care for T.S." *Id.* Therefore, because T.S. lacked a "home" to return to, the trial court "had little choice but to declare T.S. a CHINS and continue his placement in foster care." *Id.* at 1113-14. This court also noted that the trial court's oral statement at the end of the dispositional hearing explained its rationale. *Id.* at 1113 n.2.

[14] Such is the case here. We agree with Father that the juvenile court's written findings consist almost exclusively of boilerplate language that has not aided this court in its review. Nonetheless, we conclude it was not reversible error because the juvenile court's statement at Child's last review hearing before the dispositional hearing provided its rationale for continuing Child's placement in foster care, rather than with Father. The juvenile court stated that Father had made progress but his recent positive drug screens were concerning and therefore, Child could not "be safely placed with . . . parents at this time

without Court intervention and support." Tr., Vol. 2 at 218. Having heard the evidence and judged the credibility of the witnesses, the juvenile court determined that Child would not be safe if placed with either parent; we will not second guess its judgment in this regard. And because Child's paternal grandmother and maternal aunt and uncle were unavailable to care for him, the juvenile court had no other option but to continue Child's placement in foster care.

[15] Our review of the record provided the juvenile court's reasoning for its decision and it is clear from the juvenile court's order that it considered most, if not all, of the statutory factors required by Indiana Code section 31-34-19-10 in rendering its dispositional order. *Cf. In re A.I.,* 825 N.E.2d 798, 812-14 (Ind. Ct. App. 2005) (finding no due process violation where the trial court's findings, "while sparse, substantially complie[d] with the statutory requirements" in Indiana Code section 31-34-19-10 and considered all the factors therein), *trans. denied*. Therefore, we are not firmly convinced the juvenile court made a mistake continuing Child's placement in foster care and the order is not clearly erroneous. *See Tompa*, 867 N.E.2d at 163.

[16] Father "point[s] out that the lack of findings and conclusions accompanying the dispositional order leave this Court to guess why Father was not considered an appropriate placement at the time of the dispositional hearing [and contends t]his lack of reviewability makes the dispositional order clearly erroneous." Appellant's Br. at 9-10. Although our review of the record supports the juvenile court's decision and did not leave us to guess the reasons for disposition, we

take this opportunity to emphasize the importance of complying with the statutory requirements in Indiana Code section 31-34-19-10. Limited findings may impede appellate review. And appellate courts should not have to undertake the arduous task of scouring the record for evidence to support a trial court's decision that lacks the required statutory findings. In addition, as this court has previously stated,

> we are . . . not in the position to read the trial court's mind in regard to its findings of fact. Indiana Code § 31-34-19-10(5) requires that the trial court give reasons for its disposition in a CHINS proceeding. Specifically, we are concerned that procedural irregularities, like an absence of clear findings of fact, in a CHINS proceeding may be of such import that they deprive a parent of procedural due process with respect to a potential subsequent termination of parental rights. Our legislature's enactment of an interlocking statutory scheme governing CHINS and involuntary termination of parental rights compels this court to make sure that each procedure is conducted in accordance with the law. Both statutes aim to protect the rights of parents in the upbringing of their children, as well as give effect to the State's legitimate interest in protecting children from harm. We conclude that in order to properly balance these two interests, the trial court needs to carefully follow the language and logic laid out by our legislature in these separate statutes.

*In re J.Q.,* 836 N.E.2d 961, 966-67 (Ind. Ct. App. 2005) (citations omitted).

[17] In sum, the juvenile court's oral statement supported its decision and it is clear that the court considered the statutory factors in rendering that decision despite the lack of findings. Therefore, we conclude that the juvenile court's dispositional order was not clearly erroneous.

# Conclusion

Based on the foregoing, we conclude that the juvenile court's dispositional order continuing Child's placement in foster care was not clearly erroneous. Accordingly, we affirm.

Affirmed.

Crone, J., and Brown, J., concur.