



FILED

Jun 04 2026, 9:02 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# IN THE
# Court of Appeals of Indiana

Whitesell Precision Components Inc.,

*Appellant-Plaintiff*

v.

Autoform Tool & Manufacturing LLC,

*Appellee-Defendant*

and

Hitachi Automotive Systems Inc.,

*Defendant*

---

June 4, 2026

Court of Appeals Case No.
25A-PL-1182

Appeal from the Marion Superior Court

The Honorable Heather A. Welch, Senior Judge

**Opinion by Judge DeBoer**
Judges Brown and Altice concur.

**DeBoer, Judge.**

## Case Summary

[1]    Whitesell Precision Components Inc. (Whitesell) and Autoform Tool &
Manufacturing LLC (Autoform) have been engaged in nearly a decade of
litigation arising out of a contract dispute.  After three interlocutory appeals and
just as many bench trials, the case has returned to this Court for the fourth time,
now after the entry of final judgment in which both Whitesell and Autoform
prevailed on competing breach of contract claims.  Because Whitesell's
damages were larger than Autoform's, the net damages award was in
Whitesell's favor.  On appeal, Whitesell argues that because Autoform
committed the first material breach of contract, it should have been precluded
from recovering damages on its breach of contract counterclaims.  We agree
and thus reverse the trial court's judgment in Autoform's favor on that claim
and remand with instructions for the court to recalculate the net damages
award.

[2]    Autoform cross-appeals the trial court's denial of its motion to correct error
regarding its request for attorneys' fees, arguing in part that the court erred in

concluding it was not a "prevailing party" under Indiana Code section 34-52-1-1. Because we find Autoform's breach of contract counterclaim must fail since Autoform was the first to materially breach the parties' contract, we affirm the trial court's denial of the motion to correct error.

## Facts and Procedural History

### *The Parties' Contractual Relationships*

[3]     In the first interlocutory appeal in this case, the panel described the parties and their relationship as follows:

> Whitesell is in the business of manufacturing and distributing engineered, specialty, and standard components and parts used in various industries, including in the assembly and manufacture of automobiles. Autoform is in the business of manufacturing components used in the assembly and manufacture of automobiles. Autoform use[d] injector cups supplied by Whitesell to produce fuel rail assemblies that Autoform [sold] to Hitachi America, Ltd. ("Hitachi"). Hitachi place[d] fuel injectors into Autoform's fuel rail assemblies, and the finished products [were] installed into automobiles.

*Whitesell Precision Components, Inc. v. Autoform Tool & Mfg., LLC*, 110 N.E.3d 380, 381-82 (Ind. Ct. App. 2018) (footnote omitted), *trans. denied*. Hitachi, Autoform, and Whitesell were in a "directed-buy" relationship, meaning Hitachi required Autoform to purchase injector cups from Whitesell, if

Whitesell complied with certain conditions.[1]  Among other conditions, Whitesell was required to sell injector cups (1) that satisfied Hitachi's specifications, and (2) for a competitive price approved by Hitachi.

[4]    In late 2013, Hitachi approved Whitesell's initial proposal to sell injector cups for $2.47 per unit.  Before production began, Hitachi told Autoform that it may need to scale back its estimated production volume.  Autoform then requested an updated price quote from Whitesell, and Whitesell provided a low-volume quote of $2.74 for each injector cup.  When production began in late 2014, Hitachi instructed Autoform to purchase the injector cups at the high-volume price of $2.47, but in June 2015, the anticipated low-volume production scenario became a reality, and Hitachi began issuing contracts to Autoform that contemplated the low-volume price of $2.74.  However, Autoform did not inform Whitesell of that development and instead continued to purchase injector cups at the high-volume price.  In essence, this meant Autoform pocketed the 27-cent difference between the $2.74 paid by Hitachi and the $2.47 Autoform paid to Whitesell.

---

[1] In a directed-buy arrangement, "the customer requires that its direct supplier (the '**Tier 1 Supplier**') purchase from a specific sub-supplier (the '**Tier 2 Supplier**') certain raw materials, parts[,] or components . . . for integration into the product that the Tier 1 Supplier sells to the customer . . . ."  Kathleen E. Wegrzyn, *Best Practices for Customers Structuring Directed-Buy Arrangements*, THE NATIONAL LAW REVIEW (Jan. 30, 2019), https://natlawreview.com/article/best-practices-customers-structuring-directed-buy-arrangements [https://perma.cc/8V3R-M2F6].

### *Whitesell Demands the Low-Volume Price*

[5]     In early 2016, Whitesell realized that though Autoform was paying the high production volume price, the number of injector cups it ordered tracked the low-volume production estimates. Accordingly, Whitesell demanded that Autoform pay the $2.74 price, retroactive to when the low-volume shipments began to account for the "alleged 'payment shortfall' of $343,154.15." Appellant's Appendix Vol. 2 at 228. Autoform refused, and Whitesell threatened to stop shipments if Autoform did not agree to its demands by October 1. That deadline was extended while they attempted to reach a resolution, but in September, Whitesell filed a complaint for breach of contract against Autoform. Whitesell voluntarily dismissed that complaint only to re-file it on October 11—the same day on which Autoform filed its own complaint alleging breach of contract, and other claims, against Whitesell. The parties agreed to consolidate their claims under Whitesell's action, and Autoform re-filed its claims as counterclaims.

### *Temporary Restraining Order and Preliminary Injunction*

[6]     In December, Whitesell stopped shipping injector cups to Autoform after negotiations between the parties broke down. On the 27th, Autoform filed a motion for a temporary restraining order (a TRO) and asked the trial court to order Whitesell to continue selling injector cups at "$2.47[] . . . [for] all of Autoform's future orders[.]" Appellee's App. Vol. 2 at 13. In its brief supporting the TRO request, Autoform argued that Whitesell's claims were "a

bad faith attempt to manufacture a retroactive price increase[.]"[2]  It further argued that it would suffer irreparable harm if Whitesell was not ordered to continue supplying it with injector cups because it operated on a "just-in-time" inventory system.[3]  Whitesell opposed the TRO, arguing it would "force[] [Whitesell] to continue shipping injector cups at a lower price than agreed . . . ."[4]  After a hearing, the trial court issued a TRO in early January 2017 requiring Whitesell to continue selling injector cups at the high-volume price.  The parties later agreed to convert the TRO to a preliminary injunction.

[7]     After securing the preliminary injunction, Autoform began accusing Whitesell of supplying it with injector cups that did not conform with Hitachi's specifications.  In October 2017, the court entered a pre-trial order permitting Autofom to "debit Whitesell's account for each defective injector cup delivered."  *Whitesell Precision Components*, 110 N.E.3d at 383.  In early 2018, Whitesell moved to dissolve the preliminary injunction, arguing Autoform had been given adequate time to find a new supplier, and performing under what Whitesell characterized as an inequitable injunction was causing it to suffer

---

[2] Autoform's Brief in Support of Emergency Motion for Temporary Restraining Order at 2, *Whitesell Precision Components, Inc. v. Autoform Tool & Mfg., LLC* (Dec. 27, 2016) (No. 49D01-1610-PL-36015).

Though neither party included this filing (or several other relevant documents) in their respective appendices, all documents filed with the trial court in this case are part of the record on appeal.  Ind. Appellate Rule 27.  We've accessed several of those documents using our Odyssey Case Management System.

[3] Autoform's Brief in Support of Emergency Motion for Temporary Restraining Order, *supra* note 2, at 4.

[4] Plaintiff's Response to Defendant's Emergency Motion for Temporary Restraining Order at 14, *Whitesell Precision Components* (Jan. 3, 2017) (No. 49D01-1610-PL-36015).

additional damages.  The trial court denied Whitesell's motion, crediting Autoform's claim that it would take more than a year for it to find a new supplier and reasoning Whitesell had adequate legal remedies if judgment was ultimately entered against Autoform.  This Court affirmed that denial in an interlocutory appeal.  *Id.* at 387.

[8]     In January 2021, Hitachi gave Autoform permission to purchase injector cups from a new supplier.  Thereafter, Autoform moved to dissolve the preliminary injunction.  Whitesell opposed that motion and argued that before dissolving the preliminary injunction, the trial court should impose several conditions.  These included modifying the injunction's price to $2.74, with Autoform required to post a bond that accounted for the 27-cent difference between the low-volume and high-volume prices for all injector cup shipments made after injunctive relief was entered in 2017.

### 2021 Bench Trial on the Price Dispute

[9]     On March 3 and 4, 2021, while the motion to dissolve the preliminary injunction was pending, the court held a two-day bench trial on the parties' numerous claims and counterclaims.  The parties agreed to bifurcate the issues of liability and damages, with the 2021 bench trial focused on liability only.  They also agreed that Autoform's claims regarding "nonconformities in Whitesell's [i]njector [c]ups" would be stayed until the court determined

whether those claims were subject to arbitration.[5]  Appellant's App. Vol. 3 at 4. The 2021 trial also addressed a motion for default judgment Whitesell filed against Autoform for its alleged litigation misconduct, including allegations that Autoform failed to produce responsive documents in discovery and submitted false and misleading evidence to secure the TRO and preliminary injunction. Two months later, in May, the court held another hearing on whether to dissolve the injunction.

[10]  The trial court entered two separate orders on August 10, which did five things relevant to this appeal.  First, the court denied Whitesell's motion for default judgment, reasoning Autoform's conduct did not justify such a harsh sanction and "Whitesell ha[d] a remedy to recover its legal expenses through seeking reasonable attorney's fees" later in the proceedings.  *Id.* at 39.  Second, the court found as follows:

> Whitesell's initial filling of the purchase orders is understandable since the $2.47 figure was a previous quotation based on anticipated orders from Hitachi.  Once it became apparent that the actual order volumes tracked the lower volume estimate, Whitesell reasonably demanded that it be compensated based on the [i]njector [c]up figure it quoted for the lower volume scenario,

---

[5] Whitesell moved to compel arbitration in January 2018.  The trial court denied that motion in August 2018 after finding unresolved questions of fact about whether the parties had entered into an arbitration agreement. This Court affirmed that finding in a second interlocutory appeal. *Whitesell Precision Components, Inc. v. Autoform Tool & Mfg., LLC*, 129 N.E.3d 830 (Table), 2019 WL 2588359, at *5 (Ind. Ct. App. June 25, 2019) (unpublished).  While the panel's opinion left open the possibility that Whitesell could compel arbitration after the trial court resolved those questions of fact, *id.* at *5 n.5, the court ultimately concluded that the parties had not agreed to arbitration.

> which Hitachi had accepted since [the low volume] revised part projections became real.

> While there was no one governing document for the [i]njector [c]up price, . . . the [p]arties were bound by a contractual arrangement through the course of performance. That course of performance established the price per [i]njector [c]up at $2.74 once Hitachi deemed that bid from Whitesell "[c]ompetitive" in light of the anticipated readjustment of . . . estimated orders beginning July 1, 2015.

*Id.* at 44. Third, the court ruled that Autoform was liable to Whitesell for breach of contract because it had failed to pay the high-volume price after July 1, 2015, but found in Autoform's favor on several other theories of relief Whitesell raised. Fourth, the court characterized Autoform's argument that Whitesell had not complied with certain contractual conditions as "irrelevant since Autoform first materially breached th[e] agreement by failing to remit the full [i]njector [c]up price . . . ." *Id.* at 45. Finally, the court granted Autoform's motion to dissolve the injunction, subject to certain conditions designed to protect Whitesell from further harm. Autoform challenged those conditions in a third interlocutory appeal, and this Court affirmed. *Autoform Tool & Mfg., LLC v. Whitesell Precision Components, Inc.*, 197 N.E.3d 852 (Table), 2022 WL 10861415, at *8 (Ind. Ct. App. Oct. 19, 2022) (unpublished).

### *2023 Bench Trial on the Alleged Manufacturing Defects*

[11] In March and April 2023, the trial court held a three-day bench trial regarding liability on the counterclaims raised by Autoform that had not been addressed during the 2021 bench trial. Those included claims for breach of contract,

declaratory judgment, and unjust enrichment related to the alleged deficiencies in Whitesell's injector cups. The parties also addressed Whitesell's claim for attorneys' fees under Indiana Code section 34-52-1-1(b), which it filed after the court denied its request for default judgment in 2021. Again, the parties agreed to address damages at a later date.

In its September findings of fact and conclusions of law, the trial court concluded that Whitesell had breached its contract with Autoform in several respects after making unauthorized changes to its manufacturing processes that caused issues with the quality of its injector cups. It also rejected Whitesell's argument that Autoform, having first materially breached the parties' contract, was precluded from recovering damages for Whitesell's subsequent breaches. On that issue, the court reasoned as follows:

> 60. The Court . . . reaffirms its finding from the August 2021 order that Autoform committed the first material breach of their contract. Autoform's initial breach occurred first because Autoform failed to pay the contract price for the [i]njector [c]ups prior to any of Whitesell's breaches with respect to part quality.

> 61. Typically, this would mean that Autoform would be unable to enforce the contract against Whitesell in return. . . .

> 62. [But] [i]n cases where parties intend to continue their relationship beyond an initial breach, the Indiana Court of Appeals has held that, in such instances, the non-breaching party has two alternative courses of action following the breach: (1) terminate the contract or (2) continue on with the contract, so long as the non-breaching party also fulfills its obligations under the contract to avoid an inequitable result. *Watson Water Co., Inc.*

*v. Indiana-Am. Water Co., Inc.*, 85 N.E.3d 840, 849 (Ind. Ct. App. 2017) (citing *[Se.] Land Dev. Ltd v. Primrose Mgmt. L.L.C.*, . . . 952 N.E.2d 563, 571 (Ohio Ct. App. 2011)) [*reh'g denied*]. As stated in *Watson Water*, if the non-breaching party opts to continue with the contract, that party is still obligated to perform their contractual obligations.

> 63. The Court finds that because Whitesell and Autoform continued their contractual relationship, Whitesell remained obligated to uphold its obligations to manufacture the [i]njector [c]up using the agreed upon [manufacturing] process[es]. By changing [them] without authorization from Autoform or Hitachi, Whitesell breached this obligation. Even with Autoform's breach over the price, the Court finds it would be inequitable not to allow Autoform to seek actual damages for Whitesell's unauthorized changes in the [i]njector [c]up manufacturing process.

Appellant's App. Vol. 3 at 130-31.

[13] Regarding Whitesell's attorneys' fee request, the court found that Whitesell was entitled to recover fees it incurred in litigating the parties' dispute over price. In relevant part, the court reasoned as follows:

> [E]ffective July 1, 2015, Autoform knew that Hitachi had approved and would be paying Whitesell's $2.74 [i]njector [c]up price. Autoform, however, hid that information from Whitesell and, later, the Court. . . .
>
> By May 2016, Whitesell began asserting it should be paid its $2.74 price. Autoform instead argued that Whitesell was seeking a price "increase." If Autoform had been forthright and paid Whitesell the price Autoform should have been paying all along, this litigation could have been avoided at the outset.

> When Whitesell told Autoform it would not ship [i]njector [c]ups if Autoform didn't pay the $2.74 price retroactively, Autoform turned to this Court to seek injunctive relief. . . . Autoform hid from the Court and Whitesell the fact that Hitachi had approved and been paying Whitesell's $2.74 price. The Court would have considered that fact on whether Autoform was likely to prevail on the merits or in setting the price to be paid during the term of the TRO and agreed preliminary injunction.
>
> . . . During [the] discovery process, Autoform offered an expert opinion from Jeoff Burris, who didn't know any better, and [deposition] testimony from Autoform's Tim Parys, who did, that Hitachi had not approved Whitesell's $2.74 price.

*Id.* at 136-37 (internal citations omitted). Accordingly, the court concluded Autoform had litigated the price dispute in bad faith. But the court reached a different conclusion regarding the fees Whitesell incurred in defending against Autoform's defect-related counterclaims. Specifically, it found that Whitesell had itself engaged in misconduct by presenting "untruthful testimony" and "withhold[ing] information regarding the manufacturing process that may have terminated this litigation earlier."[6] *Id.* at 138-39. Accordingly, the court ruled that Whitesell could "not recover attorney's fees for work on the part quality issues." *Id.* at 139.

---

[6] The trial court had already sanctioned Whitesell for that misconduct in March 2023, which included an award of attorneys' fees to Autoform for preparing and taking certain depositions.

### *Autoform's Request for Attorneys' Fees*

In October 2023, Autoform moved to amend the court's May 2023 sanctions order, *see supra* note 6, "to further sanction Whitesell, pursuant to Ind. Code § 34-52-1-1, for maintaining frivolous, unreasonable, or groundless defenses to Autoform's quality counterclaim and/or litigating those defenses in bad faith." Appellee's App. Vol. 2 at 69. The court denied that motion in January 2024, reasoning Autoform's fee request was "premature because Autoform ha[d] not been deemed a prevailing party because the amount of damages actually suffered by Autoform, if any, ha[d] not been determined." *Id.* at 176. Additionally, the court found "no basis to expand the scope of the sanctions against Whitesell that the Court previously awarded to Autoform . . . ." *Id.* at 177.

### *2024 Bench Trial on the Parties' Damages*

In November 2024, the trial court held a bench trial to determine the parties' respective damages. In its April 2025 order, the court awarded Whitesell $5,136,165.77 in damages for Autoform's breach of contract, $1,312,585.51 in damages related to the 2021 order dissolving the preliminary injunction, and $1,129,962.51 in attorneys' fees, for a total award of $7,578,713.79. To Autoform, the court awarded $2,588,267.25: $60,000 in attorneys' fees pursuant to the sanctions order and $2,528,267.25 in damages on its breach of contract

counterclaim.[7] After offsetting the parties' damages and giving Autoform credit for sums it had already paid, the court calculated a net damages award to Whitesell totaling $4,313,130.03.

[16] Autoform filed a motion to correct error, arguing that because it was awarded damages on its counterclaims, it was a "prevailing party" under Indiana Code section 34-52-1-1 and should be awarded additional attorneys' fees under that statute. The court denied that motion, reasoning in part that "[w]hile Autoform was awarded damages, it received no judgment . . . as its [damages] were used to offset Whitesell's . . . , resulting in a final damages award only to Whitesell." Appellee's App. Vol. 3 at 54. Thus, the court found Autoform could not "be considered the prevailing party." *Id.*

## Discussion and Decision

## 1. Whitesell's First Material Breach Defense

[17] The sole issue raised by Whitesell on appeal is whether the trial court erred in ruling in Autoform's favor on its breach of contract counterclaim, even though it found Autoform committed the first material breach of contract. To support that contention, Whitesell cites the well-established rule "that '[w]hen one party

---

[7] In the trial court's conclusions of law, it determined "Whitesell must pay Autoform damages that total $2,588,267.**05**." Appellant's App. Vol. 2 at 219 (emphasis added). However, due to an apparent typographical error, the court's judgment listed Autoform's damages as "2,588,267.**25**." *Id.* at 221 (emphasis added). We note this de minimis 20-cent discrepancy only to explain the difference between the values used by Whitesell in its briefs (which cited the court's judgment) and by Autoform (which cited the court's conclusions of law).

to a contract commits the first material breach of that contract, it cannot seek to enforce the provisions of the contract against the other party if that other party breaches the contract at a later date.'" *TKG Assocs., LLC v. MBG Monmouth, LLC*, 259 N.E.3d 306, 316 (Ind. Ct. App. 2025) (quoting *A House Mechs., Inc. v. Massey*, 124 N.E.3d 1257, 1262 (Ind. Ct. App. 2019)) (alteration in original), *reh'g denied*.

[18] We begin by noting that Whitesell's opening brief does not set forth "the applicable standard of review" as required by Appellate Rule 46(A)(8)(b). Nor did Whitesell contest in its reply brief Autoform's assertion that the first material breach rule is an affirmative defense, meaning Whitesell is appealing from a negative judgment. Because Whitesell did not contest it, we assume for the purposes of this discussion that the negative judgment standard of review applies to Whitesell's appeal. A prior panel of this Court summarized that standard of review as follows:

> A judgment entered against a party who bore the burden of proof at the trial court is a negative judgment. *Smith v. Dermatology Assocs. of Fort Wayne, P.C.*, 977 N.E.2d 1, 4 (Ind. Ct. App. 2012). On appeal, we will not reverse a negative judgment unless it is contrary to law. *Id.* When determining whether a judgment is contrary to law, we consider the evidence in the light most favorable to the appellee, together with all the reasonable inferences to be drawn therefrom. *Id.* A party appealing from a negative judgment must show that the evidence points unerringly to a conclusion different than that reached by the trial court. *Id.*
>
> When a trial court enters findings of fact and conclusions of law thereon pursuant to Indiana Trial Rule 52, we apply the

following two-tiered standard of review: whether the evidence supports the findings and whether the findings support the judgment. *Tompa v. Tompa*, 867 N.E.2d 158, 163 (Ind. Ct. App. 2007). The trial court's findings and conclusions will be set aside only if they are clearly erroneous, that is, if the record contains no facts or inferences supporting them. *Id.* A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made. *Id.* We neither reweigh the evidence nor assess the credibility of the witnesses, but we consider only the evidence most favorable to the judgment. *Id.* We review conclusions of law de novo. *Id.*

*Sri Shirdi Saibaba Sansthan of Tri State, Inc. v. Farmers State Bank of Alto Pass*, 194 N.E.3d 55, 59-60 (Ind. Ct. App. 2022), *trans. denied*.

[19] Despite finding that Autoform committed the first material breach of contract (which Autoform does not challenge on appeal), the trial court concluded it could still recover damages for Whitesell's subsequent breaches under this Court's opinion in *Watson Water Company*. According to the trial court, that opinion stands for the proposition that "if the non-breaching party opts to continue with the contract, that party is still obligated to perform their contractual obligations." Appellant's App. Vol. 3 at 131. According to Whitesell, the court's reasoning "stem[med] from a misreading of" this Court's opinion. Appellant's Brief at 14. In turn, Autoform contends the trial court properly cited *Watson Water Company* for "hornbook law" that has been adopted by Indiana and "virtually every other jurisdiction[.]" Appellee's Br. at 39. Despite the confidence with which Autoform makes these sweeping claims,

Whitesell is right that *Watson Water Company* does not stand for the proposition the trial court cited.

[20] *Watson Water Company* involved a water supply agreement between two water utility companies: Watson Water Company Inc. (Watson) and Indiana-American Water Company Inc. (IAWC). 85 N.E.3d at 844. Under the agreement, Watson was obligated to purchase a minimum yearly volume of water from IAWC for forty years. *Id.* The agreement included a right-of-first-refusal clause providing that if Watson wanted to purchase additional volumes from another supplier, IAWC had the right to match the third-party supplier's terms. *Id.* at 845-46. When Watson failed to purchase the minimum volumes, IAWC sued for breach of contract and for a declaration that Watson was required to continue purchasing the minimum water volumes through the end of the contract's forty-year term. *Id.* at 846-47.

[21] After the trial court awarded IAWC contract damages and the requested declaratory relief, Watson appealed, arguing in part that it had found a third-party supplier that offered better terms than IAWC, so it should be permitted to terminate the contract due to IAWC's failure to match the third-party's terms. *Id.* at 848-49. Further asserting the prior breach doctrine did not prevent it from enforcing the right-of-first-refusal clause, Watson cited an Ohio Court of Appeals opinion for the notion "that the prior breach doctrine is applicable only when the non-breaching party treats the contract as terminated not continuing." *Id.* at 849 (citing *Se. Land Dev.*, 952 N.E.2d at 571). First, the panel found that Watson had not accurately expressed that case's holding, as

[a] fair reading . . . suggests that the Ohio court held that the non-breaching party may select whether to (1) terminate the contract or (2) continue on with the contract, so long as the non-breaching party also fulfills its obligations under the contract to avoid an inequitable result.

*Id.* Second, the panel neither adopted the Ohio court's holding nor did it give any indication that Indiana recognized the same rule or one similar to it. Instead, the panel concluded that the right-of-first-refusal clause did not give Watson the right to terminate the contract and, in any event, "Watson did not properly avail itself of the [right-of-first-refusal] clause" so IAWC had not breached it. *Id.*

[22] In short, *Watson Water Company's* discussion of *Southeast Land Development* was merely a recitation of and response to Watson's argument. The panel rejected Watson's framing of the issue and consequently did not reach the issue of first material breach, rendering the discussion of Ohio law mere dicta. Therefore, the trial court here clearly erred when it concluded that *Watson Water Company* expressed a controlling legal principle on the issue of first material breach.

[23] We also note that *Southeast Land Development* involved Ohio's version of the doctrine of repudiation (also referred to as anticipatory breach), a wholly separate doctrine from first material breach. *See* 952 N.E.2d at 569 ("If an anticipatory breach of contract is found to occur, the injured party has the option of either terminating the contract and suing the breaching party immediately or continuing the contract and suing the breaching party for damages after the time for performance has passed."). Under Indiana law, the

doctrine of repudiation comes into play when a party makes a "positive, absolute, and unconditional" statement repudiating a contract before the time for performance. *Metro Holdings One, LLC v. Flynn Creek Partner, LLC*, 25 N.E.3d 141, 160 (Ind. Ct. App. 2014), *trans. denied*. In such a case, the non-breaching party has "three options for recourse . . . ." *Fischer v. Heymann*, 12 N.E.3d 867, 872 (Ind. 2014), *reh'g denied*.

> First, she could treat the contract as rescinded and recover in *quantum meruit* as far as [she had] performed. Second, she could keep the contract alive for the benefit of [all] parties, remaining at all times ready, willing, and able to perform [her] part of the contract; then, at the time fixed for performance, . . . sue and recover according to the terms of the contract. Or third, she could treat the breach or repudiation as putting an end to the contract for all purposes of performance and sue at once to recover the damages due from the wrongful refusal to carry out the contract according to its terms.

*Id.* (internal quotation marks and citations omitted) (alterations in original).

[24] Throughout its argument, Autoform conflates the doctrine of repudiation with the doctrine of first material breach without explaining why our precedents related to repudiation should inform our first material breach analysis. Moreover, despite claiming at one point in its argument that *Fisher's* **three** options apply after one party learns of the other's first material breach, Autoform contradicts itself by claiming the non-breaching party only has **two** options for how to proceed:

**OPTION 1:** The non-breaching party can end the contract, cease performing, and sue the breaching party for damages. This option discontinues both parties' obligations under the contract going forward.

**OPTION 2:** The non-breaching party can keep the contract in effect, retain the benefit and bargain of that contract, and sue the breaching party for damages resulting from the original breach. This option, however, requires both parties to continue performing under the contract, and if either party thereafter fails to meet its continuing contractual obligations going forward, a separate action for breach and damages may be maintained.

Appellee's Br. at 37. And as Autoform would have it, "[t]he doctrine of prior material breach does not apply when the non-breaching party chooses Option 2." *Id.* at 38.

Autoform claims its proposed "two option" rule finds support in the Restatement (Second) of Contracts, as well as in an Illinois Supreme Court opinion recognizing "an exception to [Illinois'] first-to-breach rule." *PML Dev. LLC v. Vill. of Hawthorn Woods*, 226 N.E.3d 1163, 1174, 1175 (Ill. 2023) ("[T]he non-breaching party may lose its right to assert the first-to-breach rule if it accepts the benefits of the contract despite the other party's material breach."). But Autoform has not cited (and we have not found) any Indiana authority recognizing a similar exception. And we decline Autoform's tacit invitation to recognize that exception here because the record does not support a finding that Whitesell "elect[ed] to continue with the contract" after learning of Autoform's breach. *Id.* at 1175. Quite the opposite, after becoming suspicious of

Autoform's low-volume purchases, Whitesell demanded throughout 2016 that Autoform pay the low-volume price, and when the parties were unable to informally resolve the price dispute, Whitesell initiated litigation and ultimately discontinued shipments. Whitesell only resumed shipping injector cups when Autoform procured the TRO and, later, the preliminary injunction through false testimony and a sham expert report that hid from Whitesell and the trial court that Hitachi approved Whitesell's proposed $2.74 price effective July 2015.

[26] Accordingly, even if we were to accept Autoform's logic, Whitesell clearly attempted to invoke "Option 1" by terminating the parties' contractual relationship and immediately suing for breach in late 2016. Therefore, as the party guilty of the first material breach, Autoform would have no right to recover against Whitesell for its subsequent breaches, which occurred after injunctive relief was entered in 2017. *See Williamson v. U.S. Bank Nat'l Ass'n*, 55 N.E.3d 906, 914 (Ind. Ct. App. 2016) ("[A] party first guilty of a material breach of contract may not maintain an action against the other party or seek to enforce the contract against the other party should that party subsequently breach the contract." (quoting *Klepper v. ACE Am. Ins. Co.*, 999 N.E.2d 86, 96 (Ind. Ct. App. 2013), *reh'g denied*, *trans. denied*). We thus reverse and remand the trial court's judgment in Autoform's favor on its breach of contract counterclaim with instructions for the court to enter judgment in Whitesell's favor on that claim and recalculate the net damages award accordingly.

## 2. Autoform's Motion to Correct Error

[27] On cross-appeal, Autoform contends the trial court erred in denying its motion to correct error regarding its request for attorneys' fees under Indiana Code section 34-52-1-1. Under that statute, a

> court may award attorney's fees as part of the cost to the prevailing party, if the court finds that either party:
>
> > (1) brought the action or defense on a claim or defense that is frivolous, unreasonable, or groundless;
> >
> > (2) continued to litigate the action or defense after the party's claim or defense clearly became frivolous, unreasonable, or groundless; or
> >
> > (3) litigated the action in bad faith.

Ind. Code § 34-52-1-1(b). According to Autoform, the court's conclusion that it was not a prevailing party and could not recover fees under this statute was erroneous because "Autoform prevailed on its breach of contract counterclaim[] . . . ." Appellee's Br. at 52. However, because we've reversed the trial court's judgment in Autoform's favor on that counterclaim, we affirm its conclusion that Autoform is not a prevailing party for purposes of the statute. *See River Ridge Dev. Auth. v. Outfront Media, LLC*, 146 N.E.3d 906, 913 (Ind. 2020) ("[I]f a party does not receive a favorable judgment, then it is not a 'prevailing party.'").

## Conclusion

For these reasons, we (1) reverse and remand the judgment in favor of Autoform on its breach of contract counterclaim with instructions for the trial court to enter judgment in Whitesell's favor on that claim and to recalculate the net damages award accordingly, and (2) affirm the trial court's denial of Autoform's motion to correct error.

Reversed in part, affirmed in part, and remanded with instructions.

Brown, J., and Altice, J., concur.

ATTORNEYS FOR APPELLANT WHITESELL PRECISION COMPONENTS INC.

Andrew W. Hull
Michael R. Limrick
Evan D. Carr
Hoover Hull Turner LLP
Indianapolis, Indiana

ATTORNEY FOR APPELLEE AUTOFORM TOOL & MANUFACTURING LLC

Maggie L. Smith
Frost Brown Todd LLP
Indianapolis, Indiana